Curtis GRAVES, et al.,
Plaintiffs-Appellees,

v.

Ben BARNES, et al.,
Defendants-Appellants.

No. 81–1557.

United States Court of Appeals,
Fifth Circuit.

March 17, 1983.

Martha H. Allan, Asst. Atty. Gen., Austin, Tex., for defendants-appellants.

David R. Richards, Austin, Tex., for Richards.

Joaquin Avila, Norma V. Solis, Jose Garza, Mexican American Legal Defense &

Educ. Fund, San Antonio, Tex., Morrison & Foerster, Girvan Peck, San Francisco, Cal., for Bernal, et al.

Don Gladden, Fort Worth, Tex., for Escalante, Moore, John Dillard, T.R. Dillard and Mary Dillard.

Before CLARK, Chief Judge, THORN-BERRY and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

## I. Introduction:

This is an appeal by the State of Texas from an award of attorney's fees to plaintiffs in this action. Litigation in this voting rights case has spanned over a decade, requiring two trips to the United States Supreme Court. The merits of this case having been finally resolved in *Graves v. Barnes,* 446 F.Supp. 560 (W.D.Tex.1977), *affirmed,* 435 U.S. 901, 98 S.Ct. 1444, 55 L.Ed.2d 492 (1978) (*Graves IV*), only the subsidary issues of the award of attorney's fees and costs are now before us on appeal. The district court directed defendant State of Texas to pay attorney's fees and costs to the plaintiffs in the following amounts:

| Name | Attorney's Fees | Costs and Expenses |
|---|---|---|
| Mexican-American Legal Defense Education Fund (MALDEF) and George Korbel | $365,645.20 | $ 7,825.29 |
| David Richards | $166,125.00 | $ 10,000.00 |
| Don Gladden (including fees for paralegal time) | $416,933.00 | $ 12,854.54 |

Finally, by order dated May 18, 1982, the court ordered the State to pay Tony Korioth and John Collins jointly the sum of $3,600 in attorney's fees. For the reasons stated below, we modify the judgment, and affirm as modified.

## II. Discussion:

Before proceeding to analyze the propriety of the fee award, however, we must first dispose of a threshold issue raised by the State. Relying on *Supreme Court of Virginia v. Consumer's Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), the State argues that since the defendants in this case, who were enforcement officials, merely followed the mandate laid down by the Texas legislature, they are entitled to absolute legislative immunity from suit. This argument misconstrues *Consumer's Union,* in which the Court stated that "[f]ee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction." 446 U.S. at 739, 100 S.Ct. at 1978. *See also Fernandez v. Limmer,* 663 F.2d 619, 637 (5th Cir.1981), *cert. dismissed,* —— U.S. ——, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982). Moreover, this Court has recently awarded attorney's fees to the prevailing plaintiffs in a voting rights case. *See Flowers v. Wiley,* 675 F.2d 704 (5th Cir.1982).

The State next contends that the district court abused its discretion by awarding excessive attorney's fees to plaintiffs. The standard in this circuit governing the computation of attorney's fees is set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) and its progeny.[1]

In awarding attorney's fees, the district court is empowered to exercise its informed discretion, and a reviewing court will not disturb the judgment of the district court absent a showing of an abuse of discretion. *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 166 (3d Cir.1973), *affirmed,* 540 F.2d 102 (3d Cir.1976) (en banc). In arriving at an appropriate amount, the district court is required to "explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors in *Johnson* affected [its] decision." *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 581 (5th Cir.1980) (*Copper Liquor II*). Finally, the district

---

1. Attorney's fees are, of course, appropriate in this case under 42 U.S.C. § 1973*l*(e). See also 1975 U.S.Code Cong. & Admin.News 774, 807–

08. Our use of the *Johnson* standard is necessary only to determine the reasonableness of the amount awarded.

court's factual findings will not be disturbed unless they are clearly erroneous. *In re First Colonial Corp. of America,* 544 F.2d 1291, 1298 (5th Cir.1977), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

■ The Fifth Circuit recently adopted the "lodestar" method of calculating attorney's fees relied upon by the Second,[2] Third,[3] and District of Columbia[4] Circuits. *See Copper Liquor II,* 624 F.2d at 583 n. 15; *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1092–93 & n. 11 (5th Cir.1982) (*Copper Liquor III*). Under this refinement of the *Johnson* test, "[t]he 'lodestar' is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The lodestar is then adjusted to reflect other factors such as the contingent nature of suit and the quality of the representation." *Copper Liquor III,* 684 F.2d at 1093 (citing *Copeland,* 641 F.2d at 891–94).

In fixing the amount of the fee award, the district court relied on prevailing hourly rates, rather than on historical rates. Stated differently, the district court applied the rates prevailing at the time the fee application was filed, rather than those rates prevailing at the time the services were actually rendered. The court then multiplied these rates by a factor of two so that they might reflect the contingent nature of the case. The court explained its use of the contingency multiplier in the following manner: "In recognition of the often uncertain prospects of success on the merits and the protracted nature of this litigation, which served to exacerbate the tenuous nature of ultimate recovery, the fee award for work on the merits of these actions will be multiplied by a factor of two."

■ In setting out principles that can be used by district courts in assessing the contingency multiplier, we adopt the analysis set out by the Third Circuit in *Lindy II:*

Under the rubric of "the contingent nature of success" the district court should appraise the professional burden undertaken—that is, the probability or likelihood of success, viewed at the time of filing suit. The court may increase the amount established in the computation of the "lodestar" as a reasonable fee on the basis of a careful evaluation of the following factors:

1. Analysis of plaintiff's burden. Subsumed in this category are the following considerations: (a) the complexity of the case,—legally and factually; (b) the probability of defendant's liability,—whether it is clear or dubious; whether it has been previously suggested by other civil or criminal proceedings; whether it is asserted under existing case law or statutory interpretation, or is advanced as a novel theory; (c) an evaluation of damages,—whether the claims would be difficult or easy to prove.

2. Risks assumed in developing the case. This category subsumes consideration of: (a) the number of hours of labor risked without guarantee of remuneration; (b) the amount of out-of-pocket expenses advanced for processing motions, taking depositions, etc.; (c) the development of prior expertise in the particular type of litigation; recognizing that counsel sometimes develop, without compensation, special legal skills which may assist the court in efficient conduct of the litigation, or which may aid the court in articulating legal precepts and implementing sound public policy.

3. The delay in receipt of payment for services rendered.

If, having considered the foregoing or other relevant criteria, the district court desires to increase the "lodestar" award, it should identify those factors supporting its conclusion, state the specific amount

---

**2.** *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093 (2d Cir.1977).

**3.** *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir.1976) (en banc) (*Lindy II*).

**4.** *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir. 1980) (en banc).

by which the basic fee should be increased due to the contingency of success, and give a brief statement of reasons therefor. We reiterate that any such increment in the "lodestar" award is to be considered and applied apart from the evaluation of the quality of services rendered in the particular proceedings.

*Lindy II,* 540 F.2d at 117. The concept of compensation for delay in receipt of payment is founded on the principle that "[p]ayment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable." *Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir.1980) (en banc).

The lodestar may also be adjusted through the use of a multiplier to reflect the quality of representation.

Under the rubric of "the quality of an attorney's work," the court should appraise the manner in which counsel discharged his or her professional responsibilities. The district court may use this factor to increase or decrease the "lodestar" calculation.

As a first principle, the court must recognize that a consideration of "quality" inheres in the "lodestar" award: counsel who possess or who are reputed to possess more experience, knowledge and legal talent generally command hourly rates superior to those who are less endowed. Thus, the quality of an attorney's work *in general* is a component of the reasonably hourly rate; this aspect of "quality" is reflected in the "lodestar" and should not be utilized to augment or diminish the basic award under the rubric of "the quality of an attorney's work."

*Lindy I,* then, permits an adjustment to the "lodestar"—up or down—based on the all-round performance of counsel in the specific case: "Any increase or decrease in fees to adjust for the quality of work is designed to take account of an unusual degree of skill, be it unusually poor or unusually good." 487 F.2d at 168. By this is meant simply that the district

court may determine that the lawyer discharged the professional burden undertaken with a degree of skill above or below that expected for lawyers of the caliber reflected in the hourly rates. As previously rehearsed, we do not intend that this evaluation entail a detailed analysis of the lawyer's performance in each category of services rendered. Rather, the increase or decrease reflects exceptional services only; it may be considered in the nature of a bonus or penalty. The heavy burden of proving entitlement to such an adjustment is on the moving party.

In determining whether to adjust the "lodestar" for quality work or not, the district court may consider, *inter alia:*

1. The result obtained by verdict or settlement, evaluated in terms of (a) the potential money damages available to the class member, *i.e.,* a comparison of the extent of possible recovery with the amount of actual verdict or settlement; (b) the benefit—monetary or non-monetary—conferred on the class, *i.e.,* permitting the court "to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested . . . ." *[Merola v. Atlantic Richfield Co.,] Merola II, supra,* 515 F.2d [165] at 168 [ (3d Cir.1975) ].

2. An evaluation of the professional methods utilized in processing the case,—rewarding the use of efficient methods to expedite the case and penalizing the use of methods the predominant purpose of which was to delay or obstruct the proceedings.

If, on the basis of the quality of services rendered, the court is persuaded that an increase or decrease in the "lodestar" is warranted, it should identify those factors supporting its conclusions, state the specific amount by which the basic fee should be altered due to the quality of work, and give a brief statement of reasons therefor.

*Lindy II,* 540 F.2d at 117–18 (emphasis in original).

We note that under the "quality of representation". rubric, consideration of the results of the litigation enters for the first time into the calculation of the fee award.

Where exceptional results are obtained—taking into account the hourly rate commanded and number of hours expended—an increase in fee is justifiable. However, it is important again to emphasize that a huge dollar recovery does not itself justify a huge fee award. The "lodestar" itself generally compensates lawyers adequately for their time. An upward adjustment for quality is appropriate only when the attorney performed exceptionally well, or obtained an exceptional result for the client. For example, if a substantial monetary judgment was to be *expected,* that expectation normally is reflected in the hourly rate used to compute the "lodestar," and no further adjustment would be necessary.

*Copeland,* 641 F.2d at 894 (emphasis in original).

■ We wish to emphasize that a district court should not award a contingency multiplier in every case. Under appropriate circumstances, attorneys may be adequately compensated through the reasonable calculation of the lodestar.[5]

■ Finally, we note that a court need not in determining the multiplier consider some factor already included in the calculation of the lodestar. Thus, where "the lodestar itself is based on *present* hourly rates, rather than on the lesser rates applicable to the time period in which the services were rendered, the harm resulting from delay in payment may be reduced or largely eliminated." *Copeland,* 641 F.2d at 893 n. 23 (emphasis in original). *See also Copper Liquor III,* 684 F.2d at 1096 n. 26; E. Larson, Federal Court Awards of Attorney's Fees 206–09 (1981), and cases cited therein.

■ Applying these principles to the present case, we conclude that the district court did not abuse its discretion by both awarding fees based on present hourly rates and using a contingency multiplier. Analysis of the district court's stated reasons for applying the multiplier reveals that "delay in payment" did not figure in its calculus. The court based its award on the uncertain prospects of success on the merits, and relied upon the "protracted nature of this litigation" only to the extent that this "exacerbate[d] the tenuous nature of ultimate recovery." The court also adequately compensated plaintiffs' counsel for the delay in payment by its use of present hourly rates in determining the amount of the lodestar.

We have reviewed the other arguments advanced by the State attacking the amount of the fee award. Having carefully examined the record, we conclude that the district court was not clearly erroneous in its findings of fact, and that its assessment of the total award due did not constitute an abuse of discretion. We note, however, that the court did make a minor error in its calculations. The district court specifically stated in its memorandum that the award for travel time was not subject to the contingency multiplier. However, in its calculation of fee awards in Table 2, the court mistakenly multiplied the amount for travel time by a factor of two. Accordingly, we modify the judgment of the district court to correct for this error as follows:

| | |
|---|---|
| MALDEF and George Korbel | $363,900.20 |
| Don Gladden | $416,368.00 |

As modified, the judgment of the district court is AFFIRMED. Finally, we note that MALDEF requested this court to award it attorney's fees for their work on this appeal. Since they have not submitted any affidavits in support of their claim, we REMAND this issue to the district court.

---

5. The contingency multiplier is not without its critics. *See* Leubsdorf, The Contingency Factor in Attorney Fee Awards, 90 Yale L.J. 473 (1981), noted in *Copper Liquor III,* 684 F.2d at 1097 n. 30. *See also* the dissenting opinions in *Lindy II,* 540 F.2d at 125, and *Copeland,* 641

F.2d at 917. We note, however, that one of the solutions proposed by Professor Leubsdorf in his article was a simple, across-the-board doubling of attorney's fee awards. 90 Yale L.J. at 511–12. That is precisely what the district court did in this case.