**Johanna W. NELSON, Individually and as Representative of a Bondholder Class, Plaintiff**

v.

**Roanne WARING, Jr., Robert Cox, Erich James, Jerald Sklar, Lewis Allen, Individually, and Waring, Cox, James, Sklar & Allen, A Partnership; Lifemark Corporation, Lifemark Hospital Management, Inc., and Jimmy L. Moore; Otis B. Crocker, Jr., Dr. Charles H. Crocker, Jon A. Crocker, Samuel K. Crocker, Inez H. Crocker, Calhoun County Hospital, Inc., and Calhoun County Hospital, A Partnership; Bullington-Schas & Co., Inc., A. Dulaney Tipton, Jr., Juanita Cox, and Terry Allen Frost; Lane, W.G.E.S. & Gotten and William M. Gotten; Goodman & Company, and Grenada Banking System, Defendants.**

Civ. A. No. WC 81-63-LS-P.

United States District Court, N.D. Mississippi, W.D.

Dec. 21, 1983.

On Attorney's Fees Jan. 10, 1984.

R. Alan Stotsenburg, P.C., R. Alan Stotsenburg and David C. Harrison, New York City, Gen. Counsel for the Class.

Freeland & Gafford, T.H. Freeland, III, Oxford, Miss., Gen. Counsel for the Class.

Butler, Snow, O'Mara, Stevens & Cannada, Alan W. Perry, Jackson, Miss., for defendants Lifemark Corp., Lifemark Hosp. Management, Inc., and J.L. Moore.

Campbell & DeLong, Fred C. DeLong, Jr., Greenville, Miss., for defendants Waring, Cox, James, Sklar & Allen, and Jerald H. Sklar.

Fullbright & Jaworski, Blake Tartt, Houston, Tex., for defendants Lifemark Corp., Lifemark Hosp. Management, Inc., and J.L. Moore.

Gilbert & Powell, A. Spencer Gilbert, III, Jackson, Miss., for defendant Grenada Banking System.

## MEMORANDUM ORDER UNDERTAKING ANALYSIS OF FACTS AND LAW RELEVANT TO PROPOSED COMPROMISE AND SETTLEMENT AND EMBODYING FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL ORDER APPROVING SETTLEMENT

SENTER, Chief Judge.

THIS MATTER having come on for hearing on December 21, 1983, pursuant to

notice to the parties, Johanna W. Nelson, individually and as representative of a bondholder class ["Plaintiff"], Roanne Waring, Jr., Robert Cox, Erich James, Jerald Sklar, Lewis Allen, individually, and Waring, Cox, James, Sklar & Allen, a partnership ["Bond Counsel Defendants"]; Lifemark Corporation, Lifemark Hospital Management, Inc. and Jimmy L. Moore ["Hospital Manager Defendants"]; Ottis B. Crocker, Jr., Dr. Charles H. Crocker, Jon A. Crocker, Samuel K. Crocker, Inez H. Crocker, Calhoun County Hospital, Inc. and Calhoun County Hospital, a partnership ["Crocker Defendants"]; Bullington-Schas & Co., Inc., A. Dulaney Tipton, Jr., Juanita Cox and Terry Allen Frost ["Underwriter Defendants"]; Lane, Wages & Gotten and William M. Gotten ["Gotten Defendants"]; Goodman & Company ["Goodman Defendant"] and Grenada Banking System ["Bank Defendant"] [all Defendants collectively referred to as "Settling Defendants"] and class members to determine the fairness, reasonableness, and adequacy of the proposed compromise and settlement of this action as embodied in the Settlement Agreement dated October 17, 1983, and the Amendment to Settlement Agreement to Add Additional Defendants dated October 27, 1983 (collectively "Settlement Agreement as Amended"), Plaintiff and the Settling Defendants having requested the approval of the Court of the terms and conditions of the Settlement Agreement as Amended pursuant to Rule 23(e) Fed.R. Civ.P. and appropriate notice having been given to the class thereof, the Court having considered the entire court file, including the pleadings, extensive discovery including numerous depositions, voluminous documents and records produced, all motions previously decided or presently before the Court, any affidavits, exhibits, testimony and arguments of counsel submitted in connection herewith, having heard from or offered an opportunity to all interested persons who appeared at the hearing or who have made written submissions to the Court, does hereby make the following findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P., and enters the following final order approving settlement and, by separate instrument, the contemporaneous Final Judgment and Dismissal, as follows:

1.

The settlement of this class action reached among Plaintiff and Settling Defendants which we review for approval is embodied in the Settlement Agreement as Amended. Under Rule 23(e) Fed.R.Civ.P., this class action cannot be dismissed or compromised without the approval of the Court. Pursuant to this rule, the authority to approve the settlement is left to the sound discretion of the trial court. *Cotton v. U.S. Pipe & Foundry Coke Biproducts Plant*, 559 F.2d 1326 (5th Cir.1977); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir.1975).

2.

The Fifth Circuit has recently delineated the guidelines for determining the adequacy of settlement terms in a class action in *Corrugated Container Anti-Trust Litigation*, 643 F.2d 195 (5th Cir.1981):

Case law provides us with general ground rules: "The settlement terms should be compared with the likely rewards the class would have received following a successful trial." *Cotton v. Hinton*, 559 F.2d at 1330. And: "The strength of the case for plaintiffs [must be] balanced against the amount offered in settlement." [Citations omitted.] We think *this requires a three-step process*. First, the district court must evaluate the likelihood that plaintiffs would prevail at trial. Second, the district court must establish a range of possible recovery that plaintiffs would realize if they prevailed at trial. And third, guided by its findings on plaintiffs' likelihood of prevailing on the merits and such other facts as may be relevant, the district court must establish, in effect, the point on, or if appropriate, below, the range of possible recovery at which a settlement is fair and adequate.

We note that this type of evaluation is not and cannot involve a trial on the merits. "[T]he very uncertainty of out-

come in litigation, as well as the avoidance of wasteful litigation and expense, laid behind the Congressional infusion of a power to compromise. This is a recognition of the policy of the law generally to encourage settlements. This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty." *Florida Trailer & Equipment Co. v. Deal,* 284 F.2d 567, 571 (5th Cir.1960). Nor could it be achieved if the range of possible recovery had to be chartered with precision. But the district judge must "undertake an analysis of the facts and the law relevant to the proposed compromise," and he must "support his conclusions by memorandum." *Cotton v. Hinton,* 559 F.2d at 1330. "A 'mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law' will not suffice. [Citations omitted.] This is because '[a]n appellate court ... must have a basis for judging the exercise of the trial court's discretion.' " [Citations omitted.]

643 F.2d at 212 [emphasis added].

### 3.

Some of the "other factors" which should be considered in evaluating the fairness of a proposed settlement were articulated in *Girsh v. Jepson, supra,* at 157 and *City of Detroit v. Grinnell, supra,* at 463 as follows:

" ... (1) The complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risk of establishing liability ...; (5) the risk of establishing damages ...; (6) the risk of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light

of all the attendant risks of litigation...."

### 4.

■ In applying the above factors to this proposed settlement, the Court has also considered the judgment of experienced counsel and the presence of good faith bargaining among the contending parties. *Cotton,* supra. Courts have consistently refused to substitute their business judgment for that of counsel absent evidence of fraud or overreaching. *Zerkle v. Cleveland-Cliffs Iron Co.,* 52 F.R.D. 151, 159 (S.D.N.Y.1971). Compromise is the essence of settlement and the Court should not make the proponents of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of which concessions might have been gained; inherent in compromise is a yielding of absolutes and abandoning of highest hopes. *Cotton, supra.*

### 5.

■ However, "In examining a proposed compromise ... the Court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial." *Young v. Katz,* 447 F.2d 431, 433 (5th Cir.1971). As more recently stated, "The trial court in approving the settlement ... [does not] have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute...." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 456 (2d Cir.1974). A settlement hearing is not a "rehearsal of the trial." *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir.1972).

### 6.

We undertake such an analysis, guided by *Corrugated Container Anti-Trust Litigation,* of the facts and law relevant to the proposed compromise and herewith support our conclusions by this memorandum evaluating these facts and disclosing our analysis of the law as it specifically relates to the compromise and settlement herein presented.

### 7.

We begin our analysis with the first step, i.e., the likelihood that Plaintiff would prevail at trial or, as otherwise termed, the risk of litigation. Extensive detailed discovery has been taken. Numerous motions going to the merits of the claims sought to be proved have been decided or are awaiting decision after thorough briefing by the parties to the Court. Boiled down, the gravamen of the Plaintiff's claim is embodied in the emerging doctrine of fraud on the market. *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) [*en banc*], *cert. denied* 103 U.S. 722, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). Whether Plaintiff would ultimately establish the existence of such a claim is hotly contested, the subject of good faith dispute and protracted litigation, and an issue the ultimate resolution of which cannot be accurately predicted. The possibility that the Plaintiff class would make no recovery is a substantial factor which cannot be ignored. The Court finds that the likelihood of recovery is far from certain, honestly disputed and subject to the usual hazards of contested, complex litigation.

### 8.

The second required step is to establish the range of probable recovery that plaintiff class would realize if it had prevailed at trial. Unless the RICO Amendment is granted or companion state law claims survive presently undecided motions to dismiss, it is likely Plaintiff would be limited to recovering the face amount of the bonds with accrued and unpaid interest. Since the accrued interest is likely to be largely offset by the continuing expense including attorney's fees generated by this litigation were it to proceed to the pretrial and trial stages (see discussion below), the recovery for the bondholder class from this settlement, including that from the receivership, i.e., $1,850,000.00, in fact exceeds both the face amount of the bonds which is only $1,800,000.00 and, as set out in the Report to the Court on Review of Proofs of Claim filed December 15, 1983, the total of approved claims which is $1,676,355.80. Given this offset, the range of probable net recovery after trial, assuming Plaintiff were to prevail on the merits, would realistically be in the neighborhood of no more than $2,000,000.00.

### 9.

The third factor is establishment, being guided by findings on plaintiffs' likelihood of prevailing on the merits and other factors as may be relevant, of the point on, or if appropriate, below, the range of possible recovery at which a settlement is fair and adequate. Here, the settlement offer of $1,850,000.00 is 93% of the high end of the likely net recovery at trial were Plaintiff to prevail, 103% of the face amount of the defaulted bonds and 110% of the total of approved claims—an "A" in anyone's book.

### 10.

While the Court has sketched the basic reasoning for the third step in its analysis, it is not confined to the mechanistic process of comparing the settlement to the best probable recovery times the multiplier derived from the likelihood of prevailing on the merits. We are also guided by other factors, the relevancy of which to this case we shall discuss below:

(a) *Circumstances of the settlement.* Our review indicates the settlement negotiations were conducted in an adversarial and noncollusive manner. In fact, the Court had an opportunity at the preliminary settlement hearing on October 20, 1983, to observe certain negotiations firsthand. While the proponents of the settlement have not attempted to persuade the Court in the preeminence or efficacy of any particular strategy, they have established the fact that the negotiations were conducted at arm's length, in the best interest of the class, and were clearly reasonable and adequate under the circumstances.

(b) *Complexity, expense and possible duration of litigation.* All parties concede and the Court so finds this litigation will require complicated, expensive and lengthy prosecution, particularly at the pretrial hearing and trial stages. Such expense has a direct bearing on any net recovery to the class.

(c) *Stage of the proceedings.* This litigation was settled at or very near a point of greatest savings of time and expense for the class relative to full-term prosecution. Extensive discovery has allowed the Court an excellent evidentiary basis upon which to decide whether the settlement is fair; but settlement at this point obviates the necessity of very lengthy and expensive pretrial and trial proceedings which might well diminish any net recovery to the class.

(d) *Risk of establishing damages.* While Plaintiff can easily establish the loss of the principal amount of bonds and any accrued and unpaid interest, any further damages involve disputed questions of law and fact, e.g., RICO claims and claims for punitive damages under the Mississippi Blue Sky Law, which are yet unresolved.

(e) *Reaction of the class to the settlement proposal.* No class members have objected to the settlement, and there have been no elections to exclude other than one technical opt-out. Thus, the Court can conclude that the class strongly favors the proposed settlement. *See Cotton v. Hinton,* 559 F.2d at 1331. The Court does not place undue reliance on the class' acquiescence, but was impressed at the class hearing held November 5, 1982, that there was a concerted and coordinated effort among certain bondholders to protect their interests. Thus, the failure of the class to interpose objections may be fairly read to a reasonable degree as affirmance of the Settlement Agreement as Amended.

11.

The Court finds that the proposed compromise and settlement was the result of good faith bargaining and negotiations by adversarial counsel who are eminently familiar with the strengths and weaknesses of the case and who are skilled and experienced in litigation of this kind.

12.

The Defendants have denied any liability whatsoever and have entered into this settlement solely to terminate all controversy concerning the matters settled and to avoid the expense, inconvenience and distraction of further expensive and protracted litigation without any admission of any liability whatsoever by any of them.

SO ORDERED that:

(a) The terms, including each and every one, of the Settlement Agreement as Amended are fair, reasonable, adequate, and not the product of collusion among the parties hereto, and are in the best interests of the class;

(b) The Settling Defendants shall execute and deliver, *inter sese,* no later than the expiration of the time for any appeal of the contemporaneously entered Final Judgment and Dismissal or any affirmance of same, the release in the form attached hereto as Exhibit 1 (which is substantially Exhibit "C" to the Settlement Agreement as Amended);

(c) Any and all cross-claims which are, have been, or could have been asserted by or among any Settling Defendant against any other Settling Defendant are hereby dismissed with full prejudice on the merits, with each Settling Defendant to bear its own costs.

### ON ATTORNEY'S FEES

This matter came on for hearing on the motion of the firms of Freeland and Gafford and R. Alan Stotsenburg, P.C., for an award of attorney's fees and expenses. The court, having considered the motion together with the affidavits, briefs in support thereof, and the record in this action, does hereby make the following findings of fact and conclusions of law:

1. R. Alan Stotsenburg, P.C., and Freeland and Gafford, attorneys for the plaintiff class in this action, moved for an allowance of attorney's fees in the total sum of $450,000.00 and out-of-pocket expenses in the total sum of $68,551.94, all to be paid out of the total sum of $1,350,000.00 recovered for the plaintiff class in this action by way of settlement.

2. This civil action for violation of the Securities Acts was filed in the United States District Court for the State of Neva-

da in September, 1980, by R. Alan Stotsenburg, of the New York Bar, and Brown, Welles, Beller & Kravitz, Chtd. (the Kravitz firm), of the Nevada Bar. Thereafter, in May of 1981, the action was transferred from the Nevada Court to the United States District Court for the Northern District of Mississippi. R. Alan Stotsenburg continued as counsel for plaintiff, the Kravitz firm withdrew, and the firm of Freeland and Gafford was associated as counsel for the plaintiff.

3. Following extensive discovery, plaintiff's motion for class certification was heard by this court on November 5, 1982. The motion was vigorously resisted by all defendants. By order dated August 5, 1983, a Rule 23(b)(3) class was certified consisting of all persons (except defendants) who purchased first mortgage revenue bonds, Series A, issued by Calhoun County Medical Facility, Inc., and dated September 1, 1977. The same order named the law firms of R. Alan Stotsenburg, P.C., of New York, New York, and Freeland and Gafford, of Oxford, Mississippi, as general counsel for the class. Any fee to be paid counsel was contingent upon the results attained and was subject to court approval.

4. After notice to all members of the class, in which they were advised that counsel for the class intended to request fees totaling $450,000.00 as well as out-of-pocket expenses, no class member elected to oppose the proposed fee request.

5. The time and labor necessarily required of the counsel for the class to adequately represent the class is detailed in the Stotsenburg and Freeland and Gafford affidavits accompanying the motion for attorney's fees. In addition to the various pleadings represented by more than 350 docket entries, plaintiffs deposed twenty-seven witnesses at widely separated locations. These depositions total more than 6,500 pages of transcript. Complex, novel, and difficult questions of fact and law were involved based primarily on the "fraud on the market" theory. Defendants, represented by highly competent counsel, denied all material allegations of the complaint and the amended complaint. All defendants have vigorously litigated this case throughout. A high degree of skill and intensive effort was required of counsel for plaintiff. At the outset, the position of defendants was that the case had little or no value and that the possibility of a substantial recovery appeared to be remote. At stake was $1,800,000.00, the principal amount of the bond issue plus accrued interest, less the proceeds realized from foreclosure of the property which secured the bonds. As the case progressed and following certification of the class, a settlement of $1,350,000.00 was submitted to the court and tentatively approved on October 20, 1983. This sum, together with the sum of $500,000.00 paid (or to be paid) to the bondholder class by virtue of the foreclosure of the hospital property which secured the bond issue, represents $50,000.00 more than the total bond issue of $1,800,000.00. This total sum, before deduction for fees and expenses, represents 103% of the total amount of the bond issue. This settlement represents an outstanding result, one that could not have occurred without the efforts of plaintiff's counsel. While this was a desirable case from the standpoint of the possible recovery, the amount of effort required in the relatively short time interval in which this effort had to be expended, thus precluding counsel from accepting other employment, and the very real risk that no payment would be forthcoming imposed a tremendous risk factor on counsel for the plaintiffs. Counsel for plaintiffs, as described in their affidavits, are quite experienced in handling complex litigation. The fee requested is consistent with fees requested and allowed in similar litigation for the reasons set forth in the Stotsenburg, Freeland, Foley, Eskridge, and Drinkwater affidavits.

6. The time charges of the firms representing the plaintiff, detailed in the affidavits and exhibits, contain detailed accounts of the time expended in this case. This time expenditure was reasonable and was required by the complex nature of this case.

7. Due to the substantial risk undertaken in this contingent fee litigation, plaintiff's counsel are entitled to recover a fee at a rate that compensates them for that additional risk. The hourly rates ordinarily charged by Mississippi counsel do not provide adequate compensation for such a risk.

8. This court is familiar with the factors to be applied in awarding attorney's fees. As the foregoing findings detail, this case was novel and difficult, requiring a high level of skill on the part of plaintiff's counsel. In agreeing to represent the plaintiff, counsel undertook a risk of nonrecovery. Furthermore, the amount involved and the results obtained were substantial. Consideration of these factors leads this court to the conclusion that the hourly rates and time charges requested by plaintiff's counsel are reasonable.

9. The court has also reviewed the schedules of expenses submitted with the affidavits of plaintiff's counsel. These expenses are in the amount of $68,551.94 and include a sum of $1,187.45 representing expenses incurred by Nevada counsel prior to a transfer of this action. These expenses are reasonable and constitute expenses ordinarily awarded as a part of an attorney's fee award.

10. Plaintiff's counsel have cited several cases with respect to awards in similar cases in support of the motion for attorney's fees. The court has considered *Graves v. Barnes*, 700 F.2d 220 (5th Cir. 1983), and *Wolf v. Frank*, 555 F.2d 1213 (5th Cir.). These cases clearly support this court's finding that the fee request in this action is reasonable.

Having considered the foregoing facts relevant to attorney's fee awards, the court is of the opinion that a fair and reasonable attorney's fee in this matter is $450,000.00 plus attorney-related expenses in the sum of $68,551.94. An order consistent with this opinion shall issue.