Sharon **NEIDHARDT**, et al.

v.

**D.H. HOLMES CO., LTD.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**D.H. HOLMES CO., LTD.**

Civ. A. Nos. 75–2395, 75–2769.

United States District Court, E.D. Louisiana.

March 30, 1984.

---

Mary Williams Cazalas, New Orleans, La., for plaintiff, E.E.O.C.

Herman Schroeder, New Orleans, La., for plaintiffs Joseph Tardo, Sharon Neidhardt and Maria Marino.

David L. McComb and W. Philip Schuler, New Orleans, La., for D.H. Holmes Co., Ltd.

CHARLES SCHWARTZ, Jr., District Judge.

These consolidated Title VII cases are before the Court for the purpose of making a determination and express findings on the issue of whether defendant D.H. Holmes Co., Ltd. (Holmes) is entitled to attorney's fees under 42 U.S.C. § 2000e–5(k)[1] and the applicable jurisprudence. For the reasons set forth below, we find that Holmes is entitled to such an award.

I. *Course of Proceeding*

These cases of alleged sexual discrimination were tried to the Court on the following claims of plaintiffs and intervenors, i.e., The Equal Employment Opportunity Commission (EEOC) and certain former employees of Holmes:[2]

1. That Holmes through its agent and supervisor, James O'Hara made improper sexual advances upon plaintiff Sharon Neidhardt and plaintiff-intervenor Maria Marino.

2. That the alleged sexual harassment of Marino and Neidhardt were terms and conditions of their employment which discriminated against them because of their sex.

3. That Holmes failed to conduct a bonafide investigation of the aforesaid alleged behavior of O'Hara and, thereafter, failed to take appropriate remedial action.

4. That Holmes discriminated against Neidhardt and Marino, as well as plaintiff-intervenors, Pamela Clark and Phyllis Toups, by discharging them because of their sex.

5. That Holmes retaliatorily discharged the following plaintiffs and intervenors, as follows:

(a) by discharging Neidhardt and Marino in retaliation for their having made allegations of sexual harassment against James O'Hara;

(b) by discharging Joseph Tardo in retaliation for his having acted in a manner contrary to Holmes' discriminatory practices; and

(c) by discharging intervenor Phyllis Toups in retaliation for her threatened exposure of Holmes' discriminatory practices.

6. That Marino was not considered for the position of Security Supervisor at Holmes' Lakeside store because of her sex.

7. That the foregoing constituted violations of §§ 703(a) and 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2(a) and 2000e–3(a).

After trial on the merits, the Court ruled in favor of defendant Holmes and against plaintiffs and intervenors. The judgment of the Court was based, summarily, upon findings that, (1) The allegations of Marino and Neidhardt of sexual harassment were based upon their fabrications, (2) Holmes conducted a fair, unbiased and complete investigation of the allegations of sexual harassment against O'Hara, (3) The dis-

---

**1.** 42 U.S.C. § 2000e–5(k) provides:

"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

**2.** Sharon Neidhardt brought the initial suit against Holmes. Thereafter, the Equal Employ-

ment Opportunity Commission filed a complaint and prosecuted this litigation on behalf of five former employees of Holmes, including Sharon Neidhardt, Maria Marino, Joseph Tardo and Pamela Clark. Subsequently, Clark, Marino and Tardo, respectively, intervened in their own right. Phyllis Toups, who was not included in either complaint, also intervened as a *pro se* litigant.

charges of Marino, Neidhardt, Toups, Tardo and Clark were neither retaliatory, nor were they based upon sex discrimination, and (4) Holmes' failure to promote Marino was not based upon sex discrimination. The claims of the EEOC, Marino, Neidhardt, Toups, Tardo and Clark were dismissed on October 17, 1979. Marino, Neidhardt and Tardo were the only parties who appealed the judgment. On appeal, the judgment was affirmed, the appeal was determined to be frivolous, and the appellees were adjudged entitled to reasonable attorney's fees and costs of the appeal. The matter was remanded to this Court for a determination of the amount of fees and costs to which defendant was entitled. (Court of Appeals, 5th Circuit, No. 79–3971, August 7, 1980). 624 F.2d 1097.

On October 21, 1980, Holmes filed a motion to recover from the EEOC and the individual intervenors approximately $100,000 in attorney's fees and costs relative to the post-judgment appeal of the individual intervenors, the earlier interlocutory appeal unsuccessfully taken by the EEOC,[3] and all proceedings in this Court. We awarded the defendant $10,155.97 attorney's fees and costs for the frivolous post-judgment appeal. However, we declined to award additional attorney's fees and costs relative to the prior proceedings and costs, on the grounds that such would be an abuse of discretion in that the appealing plaintiffs' decision on whether to appeal may have been affected had defendant sought attorney's fees at the trial court level. Holmes appealed, and the Fifth Circuit vacated and remanded with instructions that we make express findings concerning, (1) whether Holmes' delay in moving for an award of attorney's fees resulted in unfair surprise or prejudice to plaintiffs, (2) if not, whether Holmes is entitled to an award of attorney's fees under the standard of the Supreme Court's holding in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), and (3) if so, the amount and manner of apportionment of the fees.[4]

## II. Prejudice or Unfair Surprise

The ten-day limitation on motions to alter or amend a judgment, Fed.R.Civ.P. 59(e) does not apply to requests for attorneys' fees that are statutorily part of costs, and "there is no jurisdictional time limit on the filing of a motion seeking [said fees.]" *Knighton v. Watkins*, 616 F.2d 795, 798 (5th Cir.1980); *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). However, in cases such as the instant one, where the motion for attorney's fees comes post-judgment, the trial court's discretion will support a denial of fees in cases in which the motion unfairly surprises or prejudices the affected party. *White*, supra.

As the Fifth Circuit noted in its decision on Holmes' appeal, "we see no good reason for delaying a request as long as Holmes did in this case," 701 F.2d at 556, and a local rule setting a time limit for making a motion for fees may have obviated our consideration of the issue at hand. However, absent such a rule, we are bound to apply the standard set forth in *White* and *Knighton*. We find no evidence of prejudice or unfair surprise in this case which would warrant an exercise of the Court's discretion in denying the request for attorney's fees.

In their brief, plaintiff-intervenors Tardo, Neidhardt and Marino argue that they are prejudiced by Holmes' untimely request in that attorney Richard Lafond, the EEOC staff attorney who prosecuted these claims, is no longer with the EEOC and it is questionable whether Mr. Lafond would be located and available to testify. Yet, at the hearing on the motion before the Court, held on September 14, 1984, the Court was advised that Mr. Lafond was at that time employed with the EEOC in Denver, Colo-

---

**3.** *E.E.O.C. v. D.H. Holmes Co., Ltd.*, 556 F.2d 787 (5th Cir.1977), cert. denied, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978).

**4.** *Neidhardt v. D.H. Holmes Co., Ltd.*, 701 F.2d 553 (5th Cir.1983).

rado. Since the date of the hearing, there is no indication of record that any party has attempted to produce Mr. Lafond as a witness, or to obtain his deposition testimony, relative to this matter. Had the parties believed Mr. Lafond's testimony to be crucial to their position, the Court should have been apprised of the attempts and/or inability of the parties to secure his testimony. Plaintiffs' argument in this regard is without merit.

Both the EEOC and the individual plaintiffs argue that they are prejudiced, because the Court's recollection of the circumstances surrounding this litigation has been dimmed with time. The Court responds that its recollections are more than sufficient to rule on this issue, particularly in view of the fact that the course of the litigation and all circumstances pertinent to a resolution of the issue are memorialized in the voluminous court record. While the Court concedes that a review of a plethora of documents, pleadings and the like was necessary to render this decision, particularly with regard to setting the amount of the award, such is the duty and responsibility of the Court.

Finally, the EEOC argues that it is prejudiced in that, had Holmes requested attorney's fees prior to the appeal of the plaintiff-intervenors on the merits, such a request would have influenced the EEOC's decision on whether it would appeal on the merits and/or assist the individuals in their appeal. This argument is hardly persuasive. In this regard, we would refer the EEOC to the Fifth Circuit's opinion on the appeal by Holmes which indicates that, based upon the record of this matter, any appeal on the merits of the case would probably, likewise, have been deemed frivolous.

We reproduce the portion of the Fifth Circuit's opinion which makes this point:

"... It is difficult to conceive how the timing of the motion could possibly have prejudiced the individual appealing plaintiffs' appeal decision. They did appeal, and their appeal was frivolous. Had Holmes earlier requested, and been granted, attorneys' fees, it would have required a finding by the court that the plaintiffs' claims were 'frivolous, unreasonable, or without foundation.' *Christiansburg*, 434 U.S. at 421, 98 S.Ct. at 700. While a plaintiff may not know going into trial that his claim is meritless, almost by definition an appellant should realize that he is making a frivolous appeal. *See Harris v. Group Health Ass'n, Inc.*, 662 F.2d 869, 873–74 (D.C.Cir.1981). And when, as here, the trial court's credibility findings indicate that the individual plaintiffs knew they had no claim, it would likewise appear that they should realize their appeal was frivolous. Plaintiffs prone to frivolous appeals are unlikely to be affected by a trial court's formal determination that their original claim was frivolous. Therefore, knowledge of a request for attorneys' fees is also unlikely to affect such plaintiffs' appeal decision. Moreover, even if the individual appealing plaintiffs were prejudiced in their appeal decision, it is also difficult to see how such prejudice could be 'unfair,' as their appeal was frivolous.

As to the two individual plaintiffs who did not appeal, it may be questionable to assume that they would have taken an appeal, or that their being induced not to by reason of attorneys' fees not having been requested would be unfair to them, as the appeal of their co-parties in the same case against the same defendant was determined to be frivolous. While we do not pass on the matter, there apparently is no suggestion that an appeal on the part of these two individual plaintiffs would have been any less frivolous." 701 F.2d at 555–556, fn. 6.

"Prejudice to the EEOC's appeal decision on account of the timing of Holmes' attorneys' fees motion, though not as obviously doubtful as is prejudice to the appeal decision of the individual appealing plaintiffs, nevertheless also appears most questionable. The individual appealing plaintiffs' appeal was frivolous, and it is difficult to believe that a public agency such as the EEOC would have

changed its mind and elected to appeal such a case on the merits simply because it knew attorneys' fees were being sought. In this setting, whether any such 'prejudice' would be 'unfair' may also be doubtful."

701 F.2d at 556, fn. 7.

Having followed the entire course of this litigation, we agree. Furthermore, the individuals were represented by counsel on their appeal, and we fail to see how any "assistance" rendered by the EEOC could have led to different results in the decision of the appellate court.

It is inconceivable that any of the parties could have been "unfairly surprised" by the request for attorney's fees. Defendant Holmes included such a request in its responsive pleadings at the outset of this litigation. Pleadings are to be given their proper effect, and plaintiffs were certainly put on notice as to defendant's intention to seek attorney's fees.

### III. The Christiansburg Evaluation

■ The Court within its discretion is authorized to award attorney's fees to the prevailing party in a Title VII action, pursuant to 42 U.S.C. § 2000e–5(k). The purpose of allowing such an award to a prevailing defendant is to "deter the bringing of lawsuits without foundation," "to discourage frivolous suits," and "to diminish the likelihood of unjustified suits being brought." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420, 98 S.Ct. 694, 699, 54 L.Ed.2d 648.[5] Thus, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that plaintiff's action was frivolous, unreasonable or without foundation, or that plaintiff continued to litigate after it clearly became so. *Id.* 98 S.Ct. at 701. Furthermore, defendant may be

awarded such a fee even if plaintiff's claims were not brought in subjective bad faith, although there is an even stronger basis for charging attorney's fees against a plaintiff who is found to have brought or continued a civil rights action in bad faith. *Id.* at 700–701. Applying these standards, we find that Holmes is entitled to an award of attorneys' fees against each of the plaintiffs from whom it seeks such an award, namely, Neidhardt, Marino, Toups, and the EEOC.[6] We base our conclusion in this regard upon our careful consideration of the record of these proceedings, particularly the findings of fact previously entered on the merits of plaintiffs' claims. Those findings are incorporated in the exhaustive opinion rendered by this Court,[7] and we believe it unnecessary to reiterate them here. Rather, it is sufficient that we take note of the following findings which are pertinent to our determination herein.

With regard to the alleged sexual harassment of Marino and Neidhardt, we found that the incidents upon which such allegations were based did not, in fact, occur. Rather, the alleged incidents were the result of collaboration and fabrication on the part of plaintiffs.[8] Furthermore, the Court found that Holmes made a good faith and thorough investigation of the alleged incidents of sexual harassment, based upon the overwhelming weight of the evidence.[9] We now find that plaintiffs' claims of sexual harassment were not only frivolous, unreasonable and without foundation, but were also brought in bad faith. The Court likewise finds that the claims of plaintiffs Marino and Neidhardt for retaliatory and discriminatory discharge, as well as Marino's claim of discriminatory failure to promote her, were frivolous, unreasonable and

---

**5.** Quoting remarks of Senator Lausch, 110 Cong. Rec. 13668 (1964).

**6.** Defendant maintains that although Clark's claims were dismissed on the merits, the *Christiansburg* criteria for an award of fees are not met with regard to her case. Thus, we do not consider Clark's claim in this opinion, except to the extent that it is relevant in ascertaining the

amount of attorney's fees to be apportioned among the other plaintiffs.

**7.** R.Vol. VI, pp. 780–830. (Reported at 21 FEP 452.)

**8.** See, R.VI, pp. 786–787, 789, 792, 796, 798, 814.

**9.** See, R.VI, pp. 796, 814–815.

groundless.[10] The overwhelming weight of the evidence indicated that plaintiffs were discharged for good cause.[11] Furthermore, plaintiff Marino failed to make out even a prima facie case on her claim of discriminatory failure to promote her.[12]

The Court further finds that plaintiff Tardo's claim of retaliatory discharge was frivolous, unreasonable and groundless. This claim was based upon Tardo's allegation that he was asked by his supervisor to dispute Marino's work record or prevail upon her to drop the EEOC charges. Upon consideration of the merits of the case, we found that this did not, in fact, take place.[13] Furthermore, the overwhelming weight of the evidence led to the conclusion that Tardo was terminated for good cause, specifically, his deteriorating job performance.[14]

With regard to Toups' claims of retaliatory and discriminatory discharge, we concluded after trial on the merits that her factual allegations could most charitably be termed "fantasies."[15] We find that her claims were frivolous, unreasonable and groundless.

We now come to the consideration of whether the *Christiansburg* standard warrants an assessment of fees against the EEOC. After careful consideration of the proceedings in this matter, we conclude that the EEOC acted reasonably in pursuing the claims of plaintiffs Marino, Neidhardt and Tardo, and there was a sufficient basis for the EEOC's belief that those plaintiffs' claims had merit. The factual allegations of each of those individuals were corroborative of their respective claims. Many of the inconsistencies contributing to the Court's conclusion that their claims were incredulous did not come to light until the time of the trial on the merits. Furthermore, the Court's decision on the merits was based substantially upon findings that the factual allegations of these plaintiffs were untrue. The EEOC should not be penalized for pursuing these claims which it reasonably believed were meritorious. However, we find that the EEOC should be assessed fees by virtue of its vigorous pursuit of the claims of plaintiff Toups. The EEOC at the very least should have known that Toups' claims were frivolous and without merit. Yet, it not only took up the burden of supporting her belated intervention,[16] the EEOC also pursued her claim at trial as vigorously as those of the other individual plaintiffs. Accordingly, defendant is entitled to an award of attorney's fees against the EEOC.

In making these findings, we take cognizance of the Supreme Court's admonition in the *Christiansburg* decision that "a district court [must] resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." 434 U.S. at 421–422, 98 S.Ct. at 700. We note that in the instant case, most of the findings which are pertinent to the issue before us were implicit in our earlier findings on the merits of the claims. To the

---

10. We recognize that, having found certain of the claims of plaintiffs Marino and Neidhardt subject to assessment of a fee under *Christiansburg*, our findings on their other claims may be considered superfluous. The various claims in this litigation, with the exception of Clark's claims, were overlapping and intertwining. See, *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981). Our findings, covering all of the claims of plaintiffs are made for the purpose of completeness, and are not to be construed as distinguishing certain of the claims of plaintiffs Marino and Neidhardt for the purpose of setting the amount of the fee.

11. See, R.VI, pp. 818–820.

12. See, R.VI, p. 829.

13. See, R.VI, p. 823.

14. See, R.VI, pp. 824–825.

15. See, R.VI, p. 804.

16. Toups was not included in the EEOC's initial complaint, since the Commission had previously made a determination of "no reasonable cause" as to her claims. However, the EEOC supported her intervention over defendant's opposition. (R.II, p. 468.) The Court allowed Toups to intervene, based upon a finding that the EEOC had misrepresented to her that her claims were included in the instant litigation and that the Commission was representing her relative to those claims.

extent that additional findings are necessary to this decision, we expressly find that plaintiffs' claims were frivolous, unreasonable and groundless for the reasons and in the manner set forth above.

## IV. The Amount and Apportionment of Fees

■ In awarding attorney's fees, the district court is empowered to exercise its informed discretion. *Graves v. Barnes*, 700 F.2d 220 (5th Cir.1983). The standard in this circuit which governs the computation of reasonable attorney's fees is set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The *Johnson* factors are summarized as follows:

(1) The time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

488 F.2d at 717–719. In setting the amount of an award of attorneys' fees, the district court is required to explain the findings and reasons upon which the award is based, indicating the manner in which the *Johnson* factors affected its decision. *Graves v. Barnes*, supra; *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575 (5th Cir.1980) (*Copper Liquor II*).

The Fifth Circuit has adopted the "lodestar" method of calculating attorney's fees, as a refinement of the *Johnson* test.[17] *Graves v. Barnes*, supra; *Copper Liquor, Inc. v. Adolph Coors Co.*, supra. Under this method, the lodestar is determined by the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The lodestar is then adjusted to reflect other pertinent factors, such as the contingent nature of suit and the quality of representation. See *Copper Liquor III*, 684 F.2d at 1093.

Defendant seeks the total amount of fees billed to it, specifically, $100,209.50.[18] The bulk of those fees, over $97,000.00, were billed for time spent by attorneys of record, David McComb and Philip Shuler. The remaining charges, amounting to approximately $3,000.00, relate to the work of paralegals and a law clerk. Defendant has submitted itemized lists of time expended and work performed by Messrs. McComb and Shuler during the course of this litigation. Having carefully reviewed those lists, as well as the entire record in this matter, we find that the time reasonably expended by Mr. McComb was 840 hours,[19] and the time reasonably expended by Mr. Shuler was 225 hours.

In making this determination, we have considered, to the extent that these can be determined on the basis of the record and the submissions of counsel, (1) the time in which the work could reasonably be expected to have been accomplished, (2) the apparent duplication of certain efforts, and (3) the apparent distinctions between strictly legal work and other types of efforts. We have excluded time which we find is not sufficiently documented and/or ex-

---

17. This method has particular significance in cases in which the court must consider the contingent nature of the suit, as opposed to the instant case in which counsel for defendant has been paid attorney's fees at an hourly rate on an interim basis. We apply the lodestar method in this case, since such an application is apparently mandated by the Fifth Circuit. However, in so doing, we note that the same result would have been reached, utilizing a basic application of the *Johnson* factors.

18. This figure is borne out by the copies of bills paid by defendant, which were submitted in conjunction with defendant's motion.

19. For the purpose of calculating Mr. McComb's fee at varying rates, as we find it necessary to do, we find that 295 hours were spent prior to January 1, 1977, and 545 hours were spent thereafter.

plained by the record and submissions of counsel. Furthermore, we expressly decline to award defendant fees attributable to the interlocutory appeal taken by the EEOC on the issue of the application of Rule 23 of the Federal Rules of Civil Procedure in civil rights cases.[20] We take cognizance of the Fifth Circuit's instruction on the subject of fixing fees, as stated in the case of *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.1981):

> "In fixing the fee, the district court should be mindful that in complex civil rights litigation ... issues are overlapping and intertwined ... Time spent pursuing unsuccessful claims that were clearly without merit should be excluded. However, the mere fact that the litigants did not succeed in obtaining a judgment on all of the claims asserted does not mean that time spent pursuing these claims should automatically be disallowed. [citations omitted.] Instead, the court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case."

For purposes of our determination, it is within our discretion to exclude such an award, which we find cannot fairly be assessed against the plaintiffs.

■ At the outset of this litigation, the hourly rate of both Messrs. McComb and Shuler was $60.00. From January 1, 1977 throughout the remainder of the litigation in the trial court, Mr. McComb's hourly rate was $70.00, and Mr. Shuler's rate remained at $60.00. We find these rates to be both reasonable and within the parame-

ters of the prevailing rates in the community for similar work during the time period in question. Thus, we find that the amount of $69,350.00 fairly represents the reasonable attorneys' fees incurred by the defendants. This amount gives due consideration to, (1) the nature of the questions involved in this case, (2) the skill requisite to perform the legal service properly, (3) the amount involved and the results obtained, (4) the experience, reputation, and ability of the attorneys, (5) the nature and length of the professional relationship with the client, and (6) the fixed nature of the fee. Specifically, the Court finds that the "lodestar" figure need not be altered on the basis of the foregoing considerations.[21] However, we do modify that figure in the manner set forth below.

Prior to apportioning a fee award among plaintiffs Marino, Neidhardt, Tardo, Toups and EEOC, we find that the figure noted above should be modified to take into consideration the portion attributable to the defense of plaintiff Clark's claim. Although defendant seeks no fees from Clark, we believe it only fair to assure that the remaining plaintiffs are not held responsible for the fees attributable to Clark's claim. Our review of the record leads us to the conclusion that the necessary efforts of counsel in defending Clark's claim were nominal compared to the defense of the other claims. Thus, we find that $5,000.00 accurately reflects the cost of the defense of that claim and the "lodestar" figure should be reduced accordingly.

■ We have found that the *Christiansburg* criteria are met as to the EEOC only to the extent of their prosecution of plain-

---

**20.** The EEOC appealed the district court's order that it was required to certify the class pursuant to Rule 23, F.R.Civ.Proc. Although the EEOC lost that appeal (cited in fn. 3, above), its position subsequently became law. See, *General Telephone Co. of the Northwest, Inc.*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

**21.** We are also compelled to address the remaining *Johnson* factors. In that regard, we accept and adopt counsels' assertion that "time limita-

tions imposed by the client or circumstances" and "undesirability of the case" are not factors which apply to this case. Furthermore, counsel concede that other business was not foreclosed by the acceptance of the case; the time listings submitted by counsel indicate that this case involved a percentage of the attorneys' business hours comparable to that of any protracted litigation which proceeds to judgment.

tiff Toups' claim. Based upon our review of the record, the transcript of trial and counsels' submissions, we find that 100 hours and 45 hours, fairly represent the time spent by Mr. McComb and Mr. Shuler, respectively, relative to Toups' claim.[22] We conclude that defendant is entitled to judgment against the EEOC in the amount of $9,700.00 for attorneys' fees as part of costs.

With regard to the amount of fees to be assessed against the individual plaintiffs, the Court has, insofar as is possible, taken into consideration awards in similar cases. *Johnson,* supra at 719; see *Fisher v. Fashion Institute,* 491 F.Supp. 879 (S.D.N.Y. 1980). The ability of plaintiffs to pay an award has been considered by the Court. *Whiten v. Ryder Truck Lines,* 520 F.Supp. 1174 (M.D.La.1981). We find that defendant is entitled to judgment in the amount of $40,000.00 against the individual plaintiffs.

Accordingly, and for the foregoing reasons, the Clerk of Court is directed to enter judgment as follows: (1) in favor of defendant and against plaintiff EEOC in the amount of $9,700.00 in attorneys' fees as part of costs, and (2) in favor of defendant and against plaintiffs Maria Marino, Sharon Neidhardt, Joseph Tardo and Phyllis Toups, jointly, severally and in solido,[23] in the amount of $40,000.00 in attorney's fees as part of costs.

---

**22.** We take into account time attributable to defendant's opposition to Toups' intervention, as well as defense of her claim after she was allowed to intervene.

**23.** *Nelsoms v. Southwestern Electric Power Co.,* 18 FEP Cases 1681 (W.D.La.1977), holding plaintiffs and intervenors liable for attorney's fees, jointly, severally, and/or in solido.