**Lucille YOUNG, et al.,
Plaintiffs-Appellees,**

**v.**

**Samuel PIERCE, Jr., Secretary, United States Department of Housing and Urban Development, et al., Defendants-Appellants.**

**No. 86–2771.**

United States Court of Appeals,
Fifth Circuit.

July 20, 1987.

Harold J. Krent, Washington, D.C., Robert J. Wortham, U.S. Atty., Tyler, Tex., Richard K. Willard, Jonathan Strong, Office of Gen. Counsel, U.S. Dept. of Housing

and Urban Development, Washington, D.C., Arthur R. Goldberg, U.S. Dept. of Justice, Civ. Div., Thomas M. Bondy, Robert Wolff, Michael Jay Singer, Washington, D.C., for defendants-appellants.

Elizabeth K. Julian, Mullinax, Wells, Baab & Cloutman, Michael M. Daniel, Julian & Daniel, P.C., Dallas, Tex., for plaintiffs-appellees.

Before RANDALL, GARWOOD and DAVIS, Circuit Judges.

RANDALL, Circuit Judge:

Defendants appeal from orders of the district court issuing an interim injunction and appointing a special master. We vacate and remand to the district court for reconsideration in light of this opinion.

## I. Overview

This is one of two appeals arising from a class action lawsuit in which the plaintiff class charged that the United States Department of Housing and Urban Development ("HUD") and certain local housing authorities in East Texas have maintained racially segregated housing in violation of the Constitution, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*, and 42 U.S.C. §§ 1981 and 1982.[1]

Before setting forth the procedural history of this case, it is necessary to lay out, in general terms, the structure of the system of HUD-supported housing in East Texas. HUD's housing programs in East Texas can be grouped into three general categories. HUD's earliest efforts focused on the low rent public housing program ("LRPH" or "low rent public housing") under which

HUD directly funds a local public housing authority ("PHA") which constructs and operates the housing projects. This program was HUD's chief means of providing low-income housing until the mid–1960s. The other two categories consist of housing that is operated (with insignificant exceptions) by private entities with HUD subsidies. First, under the rent supplement program, HUD subsidizes mortgage insurance and interest in order to encourage the construction of low-income housing, and HUD provides the projects with supplemental rental payments. Second, since the mid–1970s, HUD has primarily stressed, at Congress' direction, the Section 8 housing program, under which HUD provides assistance for families occupying new apartments by making direct rental payments to landlords.

## II. Facts and Procedural Background

The instant action was filed by named plaintiffs Lucille Young and Virginia Wyatt against HUD[2] in 1980, alleging that HUD had maintained racially segregated housing in violation of the Constitution. The two plaintiffs, later joined by named plaintiff Helen Ruth Jackson, also alleged that HUD's actions, as well as those of two local housing providers, violated Title VI, Title VIII, and 42 U.S.C. §§ 1981 and 1982. The three individuals, who had applied to low-rent public housing operated by the Pittsburg and Clarksville PHAs, sought to represent a class of black applicants for and residents of all HUD-assisted housing, including rent supplement and Section 8 projects, through thirty-six East Texas counties. HUD opposed the motion for class certification and moved to dismiss the case, in part, for failure to state a cognizable claim against HUD under the Constitution, Title VI, Title VIII, section 1981, and section 1982, and, in part, on the ground

---

**1.** Our disposition of the related appeal, from the district court's judgment awarding attorney's fees, is reported at 822 F.2d 1376 (5th Cir.1987).

**2.** The defendants named in the original and first amended complaints were the Secretary of HUD, the Regional Administrator of HUD responsible for the public housing programs in the relevant areas of East Texas, the Housing

Authority of Clarksville, Texas and its Executive Director, and the Housing Authority of Pittsburg, Texas. Claims against the Clarksville and Pittsburg Housing Authorities were later severed by the district court. We refer to the defendants in this case, as the case proceeded, collectively as "HUD."

that plaintiffs had standing to challenge HUD's actions only with respect to the Clarksville and Pittsburg PHAs.

The district court, in an opinion dated July 1, 1982, first determined that Title VI, Title VIII, and the civil rights statutes afforded private rights of action against HUD. *See* 544 F.Supp. 1010 (E.D.Tex. 1982). The court also found that the plaintiffs had stated a valid cause of action against HUD under the fifth amendment. The court next held that the plaintiffs had standing because they possessed the requisite injury in fact to raise the claims of discrimination.

The court then moved on to consider whether the action was maintainable as a class action under the requirements of Rule 23 of the Federal Rules of Civil Procedure. The court proceeded to certify the class requested. Therefore, the class, as certified, covered HUD's LRPH program, the rent supplement program, and the Section 8 program. In certifying the class, the district court determined that the claims of discrimination in low rent public housing brought by the named plaintiffs were sufficiently similar to claims of discrimination in rent supplement and Section 8 projects brought by other putative class members to include all plaintiffs within the same class. The court explained that "[w]hether HUD has violated the law, by abrogating its affirmative duties and thereby funding racially discriminatory housing projects in East Texas, is a common question of law," that united the class. 544 F.Supp. at 1031. The court supported its determination by reference to "across-the-board" class actions brought under Title VII, which allow victims of employment discrimination to maintain an action against all discriminatory employment practices allegedly maintained by the employer. The court added that the claims of the named plaintiffs were typical in that "each named plaintiff, like each member of the putative class, has allegedly been deprived of the opportunity to reside in HUD-assisted housing which is free from the taint of racial discrimination." *Id.* at 1032. However, the court did sever plaintiffs' claims against the two lo-

cal housing providers, and thus, the case proceeded only against HUD.

After extensive discovery, the court rendered an opinion in this case on July 31, 1985. 628 F.Supp. 1037 (E.D.Tex.1985). First, the court disposed of HUD's motion to decertify the class. HUD argued, in its motion to decertify, that the decision in *General Telephone Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (invalidating "across-the-board" Title VII class action certifications) called into question the propriety of the class. The district court rejected HUD's argument that the court had, in certifying the class, relied on the "across-the-board" doctrine invalidated in *Falcon,* and that the class did not meet the Rule 23 requirements. The court said that in the order certifying the class it had used the "across-the-board" doctrine as an analogy to the facts of this case but that the action was not certified as an "across-the-board" action; according to the court, that doctrine has relevance only to employment-related Title VII cases.

The court rejected HUD's claims that the plaintiffs sought to challenge HUD's actions "across-the-board" because the action includes numerous public housing sites and 3 different programs. The court stated that "[t]his objection is largely semantic. HUD actually performs one function: it provides public housing." 628 F.Supp. at 1042. The court said that the class was challenging the result of HUD's activity—a system of segregated housing. Further, the court said that the class was not challenging "across-the-board" a number of conceptually distinct HUD functions, but rather, a single activity that is regulated by a variety of statutes and guidelines. The court went on to note that, even if this action were to be considered "across-the-board," *Falcon* did not rule out all class actions of this type. The court said that plaintiffs had shown that HUD maintained a single, uniform policy of knowingly supporting segregated housing in East Texas and therefore, the case fit within an exception left open by *Falcon.*

Next, the court granted summary judgment for plaintiffs on all liability issues.[3] With respect to public housing, the district court relied primarily on the fact that the majority of such projects in East Texas were racially identifiable, even though the pool of available applicants was split 50–50. The court continued that given the background of *de jure* or official segregation in public housing, HUD was on notice of the racial imbalance and had a duty to help disestablish the racially imbalanced projects. While the court recognized that HUD itself had found that many of the PHAs discriminated in the use of tenant selection and assignment policies and had required the PHAs to sign agreements to alter their practices, the court found that HUD knew that the compliance agreements by themselves would not end the illegal practices.

In addition to making those findings with respect to low rent public housing, the court pointed to three instances in which HUD had not required Section 8 project owners to submit affirmative marketing plans, and it characterized as ineffectual other plans that had been submitted. The court reasoned that the very premise of HUD's site selection criteria, which promoted building in areas primarily occupied by non-minorities, was that the affirmative marketing plans were necessary to attract minorities to the new projects. The court found that, without aggressive marketing plans, HUD's Section 8 policy was doomed to failure. It relied on evidence of racial imbalance in the Section 8 projects to bolster its conclusion.

In light of those findings, the court found that HUD's knowing funding of projects that were *de facto* segregated constituted purposeful discrimination under the fifth amendment. While in the court's view, knowing acquiescence was tantamount to a constitutional violation, the court also inferred discriminatory intent from the facts that HUD had been apprised of past violations committed by the PHAs and that HUD had an affirmative duty

under Title VIII to learn of and to abate segregation. According to the court, HUD did not satisfy its affirmative obligation under Title VIII to support fair housing, and it violated Title VI's prohibition against lending support to entities that engage in discrimination. The court did not specifically refer to Section 8 housing or rent supplement projects in the analysis of HUD's liability discussed above.

On October 3, 1985, the plaintiffs moved for injunctive relief seeking to require HUD to submit a remedial plan. In response, without conceding liability, HUD proffered a remedial plan. With respect to the PHAs that HUD had previously determined to be in noncompliance with Title VI, HUD suggested that they be required to submit quarterly reports providing data on the racial characteristics of all applicants for housing, that HUD closely monitor those instances in which the data indicated problems, and that HUD join with the PHAs in devising a plan suited to their local needs to further the disestablishment of unlawful segregation. With respect to those PHAs previously found to be in compliance, HUD suggested that the plan require HUD to conduct an occupancy audit of each PHA within the next year. HUD further proposed that the waiting list policies at each PHA be revised so that, if the applicant refused the first available unit, then he or she would be placed at the bottom of the waiting list. The proposed plan also provided for a voluntary "integrative move-in option" so that applicants for low-income public housing who wished to move to projects in which their race did not predominate could do so when they arrived at the top of the waiting list. HUD also indicated that it would provide for priority transfers of residents between projects for similar reasons.

On July 3, 1986, the district court, finding HUD's proposed remedial plan inadequate to remedy the violations found, and determining that some form of interim relief was necessary because "HUD contin-

---

**3.** HUD had filed a motion for summary judgment. The plaintiffs opposed the summary judgment and filed their own motion for summary judgment. The parties stipulated that the court could either decide the case as a summary judgment or on a stipulated record.

ues to dispute its liability and refuses to undertake further voluntary efforts to desegregate," entered an injunction. *Young v. Pierce*, 640 F.Supp. 1476, 1479 (E.D.Tex. 1986) (injunction order). In its order, the court enjoined HUD from "engaging in any conduct having the purpose or effect of creating, promoting, or funding racial segregation" in all HUD-assisted housing in the class action counties; from "discriminating against any person or group of persons on account of their race ... in connection with their participation in or receipt of benefits for any housing program or activity receiving federal financial assistance"; from "refusing or neglecting to begin immediately to dismantle the dual system of housing segregation that exists in publicly funded housing and to exercise their affirmative duties to provide fair housing"; and from "enforcing federal regulations providing technical assistance, making federal funds available, or adopting, approving, or using tenant selection and assignment plans or policies in ways that have the purpose or effect of fostering racial segregation." *Id.* at 1479.

In a separate order also dated July 3, 1986, the court appointed a special master "to monitor and report on HUD's desegregation efforts, to study the operation of the publicly funded housing programs in East Texas, and to recommend further action that might be taken as part of a comprehensive remedial decree." *Young v. Pierce*, 640 F.Supp. 1476, 1477 (E.D.Tex. 1986) (order appointing special master) at 2 [hereinafter referred to as "special master order"]. The court initially rejected HUD's argument that the case did not meet the "exceptional" case requirement under Fed. R.Civ.P. 53. It reasoned that an exceptional situation existed in that the class action encompassed well over one hundred housing developments in 36 counties, that a neutral outsider was needed to gather information and to recommend a remedial plan that was tailored to the differing needs at the disparate housing facilities, and that the traditional adjudicatory model was ill-equipped to find solutions to the complex segregation problem in the 36 counties.

Among other things, the court invested the master with power to examine any HUD document (seemingly without regard to whether any privilege might attach to the document), to conduct *ex parte* proceedings with either party, and to conduct interviews with any person, including individual HUD employees.[4] The master was

---

4. The order provided, in part:

The special master shall have three primary responsibilities in this action:

1. to monitor the remedial efforts undertaken by HUD to comply with the order enjoining it from engaging in any conduct that has the purpose or effect of fostering racial segregation and directing it to dismantle the dual system of publicly funded housing in East Texas;

2. to study the operation of the local public housing authorities, rent supplement programs, and section eight housing programs in the thirty-six class action counties, in order to assist the court in evaluating HUD's desegregation efforts and in determining additional ways to facilitate racial desegregation in HUD-assisted housing; and

3. to report to the court on the results of HUD's remedial efforts and recommend further action, if any, that might be taken as part of an appropriate remedial decree, including a definition of substantial compliance.

To assist the special master in carrying out his responsibilities, he shall have all of the rights and powers provided under Federal Rule of Civil Procedure 53.

a. The master shall have complete and unrestricted access to the records of HUD, including statistical data, contracts, reports, correspondence, plans, advertisements, notices, compliance reievws [sic], and other relevant documents. Within ten days of entry of this order, HUD shall designate an official to serve as a liason between the master and the agency. The liason official will act to facilitate the master's ability to obtain information from the agency.

b. The master shall have plenary authority to interview, at reasonable times and places, persons, including employees and staff of HUD, whom he believes will have information that will assist him in performing his duties. HUD will use its best efforts to encourage the local public housing authorities and other providers of federally funded housing to cooperate fully with the special master.

c. The special master shall [sic] the right to hire assistants as he deems necessary, subject to the approval of the court, and his authority, as outlined in this order, will extend to any other individual whom he designates. He may also seek the assistance of court-appointed experts, whose costs may be assessed against one or both parties.

also directed to file quarterly reports which were to include advice on interim relief, and then to file a final report by October 1, 1987, detailing his recommendations for ultimate relief. The court specified that the "clearly erroneous" rule would only apply to those portions of the report which were based upon hearings conducted in accordance with Rule 53. The order specified that, after the filing of the final report, each party would have 30 days in which to object, request a hearing, or propose an alternative remedial plan. HUD appealed from both the injunction and special master orders.[5]

In its brief on appeal, HUD did *not* contest liability with respect to its prior actions in overseeing the low-rent public housing program administered by the PHAs. What HUD did challenge was the district court's class certification and its liability findings with respect to the non-LRPH programs, specifically, the rent supplement and Section 8 programs. HUD claimed that the portion of the case dealing with "non-public" housing was not properly included in plaintiffs' class action—the named plaintiffs lacked standing to challenge HUD's administration of the Section 8 and rent supplement programs, had failed to satisfy the commonality requirement of Rule 23 of the Federal Rules of Civil Procedure, and had produced no evidence to show HUD's liability with regard to non-LRPH housing. In the alternative to its challenge to the scope of the class certified, HUD alleged error in the district court's determination of liability with respect to non-LRPH housing on the ground that there was no finding of purposeful discrimination by Section

8 providers and there was no stated ground for liability with regard to the rent supplement programs. Further, HUD. asserted that the injunction was invalid under Rule 65(d) of the Federal Rules of Civil Procedure because it lacked specificity and that the broad powers conferred by the order of reference to the special master could not stand under Rule 53 of the Federal Rules of Civil Procedure or the separation of powers doctrine.

Oral argument on the appeal was scheduled for April 8, 1987.[6] On April 6, 1987, this court was advised that the parties had reached an agreement with respect to several of the issues raised on appeal. The agreement provided:

1) The parties agree to restrict the class certified in the above-captioned case to applicants to and residents of traditional low-rent public housing owned by public housing authorities in the thirty-six East Texas counties.

2) This agreement shall not be construed to foreclose any argument opposing or supporting use of other HUD-assisted housing as a remedy for the class certified in paragraph # 1.

3) In light of the instant agreement, the parties agree that the number of hours of attorney's fees claimed by plaintiffs in No. 86–2526 will be reduced by six per cent (calculated by years).

Joint Agreement Circumscribing Class and Leaving Open Question of Remedy. In light of the agreement, the parties jointly moved for partial vacation of the district court's judgment[7] and this panel granted the motion.

---

d. The special master may confer with the parties or their attorneys in ex parte communications, as required to fulfill his duties.

e. In order to prevent duplication of efforts, the master shall receive, if he so desires, all of the requests for and responses to discovery during the remedial phase of this litigation. Each party is directed to supply the master with the requests it has made or will make or the responses it has given or will give.

f. Nothing in this order of reference should be construed to limit, modify, or otherwise interfere with HUD's existing authority to investigate, monitor, or enforce compliance

with respect to the plaintiffs' claims of unlawful discrimination.
Special master order, 640 F.Supp. at 1477–78.

5. A notice of appeal from the district court's judgment of May 8, 1986, awarding interim attorney's fees and costs to plaintiffs, had already been filed by HUD on July 7, 1986.

6. Oral argument of the appeal taken from the district court's award of attorney's fees, *see supra* note 5, was scheduled to take place immediately following argument of this appeal.

7. The motion submitted to the court provided:
The parties in the above captioned case have reached agreement with respect to one

When counsel for the parties appeared for oral argument on April 8, 1987, we suggested to them that the parties should attempt to resolve the remaining issues through negotiation. The parties were instructed to report to the panel within twenty-one days on the status of the negotiations. Further, the parties were informed that, if it appeared after the twenty-one days that the matter could be settled within an additional ten days, we would refrain from taking action on the case for that period of time. After considering the suggestion made by the panel, the parties decided to forego the scheduled argument and to undertake further settlement negotiations.

On May 8, 1987, the panel was informed by the parties that the parties had been unable to settle the remaining issues in the case and thus, that the issues were ripe for disposition by this panel. We directed the parties to file supplemental letter briefs discussing the effect of the settlement on the issues remaining on appeal.

### III. The Remaining Issues

#### A.

It is the position of the parties that the settlement obviates the need for this court to resolve the issues, raised by HUD on appeal, relating to the scope of the class. Certainly, given that the settlement by its terms resolves those class issues, there is no reason to question the position taken by the parties. Therefore, we turn to consider whether other issues remain for resolution by this panel.

#### B.

■ With respect to the scope of the interim injunction, both parties agree that

issue presented on appeal. As the attached agreement attests, the parties believe that the class certified should be circumscribed to include only residents of and applicants to traditional low-rent public housing owned by public housing authorities in the thirty-six class action counties in East Texas.

Accordingly, the parties respectfully move this Court, as part of its ultimate judgment in this case, to vacate the district court's certification of a class beyond that described above

the injunction must be vacated for lack of specificity. In the view of the parties, the injunction must be vacated and remanded to the district court so that the injunction can be modified to make more specific the obligations of HUD. We believe that this is the proper course of action since the injunction, as presently written, runs afoul of the specificity requirements of Rule 65(d) of the Federal Rules of Civil Procedure. It is properly the role of the district court, familiar as it is with this case, to attempt the modification of the injunction to accord with the dictates of Rule 65(d). In addition to addressing the lack of specificity problem, the district court, on remand, should make any other modifications to the injunction that are rendered necessary or advisable in the light of the settlement.

#### C.

With regard to the special master order, the parties are in agreement that a partial vacation of the order and a remand to the district court for modification of the order is called for. The parties agree that HUD should be given the protections it desires with regard to the inquiries made by the special master. Specifically, plaintiffs concede the necessity of modification of the portion of the order that can be read to give the master authority to discover documents and other materials irrespective of any privileges that may apply. According to plaintiffs, the modification should "insure HUD's protections under relevant privileges and ... insure HUD's right to assert that any information requested is not within the scope of discovery allowed by the Federal Rules of Civil Procedure." Letter of Plaintiffs' Counsel (May 11, 1987). Additionally, modification of the

and to vacate all findings of fact and conclusions of law to the extent they relate to liability as to persons no longer in the class.

Should this Court concur in this agreement, the parties also request that the Court order that the number of hours determined for attorney's fee purposes in No. 86–2526 be reduced by six per cent (calculated by year). Joint Motion for Partial Vacation of District Court Judgment (footnote omitted).

portion of the order that can be read to give the master the authority to interview HUD employees outside the presence of HUD's attorneys and to exclude HUD from objecting to questions posed to its employees is necessary. Plaintiffs agree to modification of the order "to give HUD all the protections of the Federal Rules of Civil Procedure in any interview of its employees conducted by the master including limiting the scope of the examination to matters discoverable under the Federal Rules of Civil Procedure and giving HUD the right to have the interview/examination conducted on a court reported record with full opportunity to object." *Id.* HUD is unsatisfied with the plaintiffs' concessions to the extent that it believes that counsel should be permitted to be present during interviews by the master of any person, whether or not the person is a HUD employee.

In its brief on appeal, HUD took issue with the fact that the special master order gave the special master the authority to monitor compliance with the injunction and to act in an investigatory capacity, arguing that this runs afoul of Rule 53 of the Federal Rules of Civil Procedure and the separation of powers doctrine. In its letter to the court informing us that the parties had been unable to settle the remaining issues in the case, HUD responded to plaintiffs' concessions (set forth in plaintiffs' May 11, 1986 letter to the court) regarding the modification of the special master order to ensure to HUD the protections discussed above. HUD agreed with the plaintiffs' concessions but said that the concessions did not go far enough because they did not cure HUD's objections to the fact that the master is empowered to assume an "investigatory mantle."

In response to our request for a letter brief discussing the effect of the settlement on the issues remaining on appeal, HUD stated that "[w]ith respect to the reference order to the master, settlement of the class certification issue diminishes the permissible ambit of the master's monitoring authority and undermines any need that otherwise might have been suggested for the master to act in an investigative capacity (which, in our view, is improper in any event)." [8] Appellants' Letter Brief at 1 (May 22, 1987). Therefore, in HUD's view, in light of the settlement, even less reason exists for the master to have and exercise the monitoring and investigatory powers.

In considering if we should pass on whether the special master order must somehow be modified to limit the scope of the master's powers, we are conscious of the speculative nature of our inquiry, and thereby, of any decision that we might render. The class certification issue has been settled and the injunction will be modified to reflect both the circumscribed scope of the class and the need for specificity with respect to HUD's obligations. As a practical matter, the settlement itself, and the modification of the injunction to reflect the terms of that settlement and to make clear HUD's obligations, will affect the meaning of the reference order as it is presently written. Further, the settlement and modification of the injunction is likely to affect the view of the district court as to the powers that the special master should have. It is possible that the court would conclude, given the circumscribed class and the fact that the injunction will spell out, in greater detail, HUD's obligations, that the master no longer needs many of the powers originally granted him. Certainly, a decision by this court on the scope of the reference order should await a potential narrowing decision by the district court.

■ Therefore, the proper approach for us to take is to remand to the district court for that court to consider, in light of the parties' settlement, the court's modification of the injunction, the concerns raised by the parties on appeal, and the special master's experience in this case up to this point, what powers the special master needs and thus, whether the special master order should be modified with respect to the scope of the master's powers. Further, on remand, the court should modify the

---

**8.** In their letter brief, plaintiffs stated that "[t]he class settlement has no effect on the issues concerning the reference of the monitoring and remedy issues to a master."

order to conform to the parties' agreement regarding protections that HUD requires.[9]

### IV.

On the basis of the foregoing, the orders of the district court are VACATED and REMANDED for reconsideration in light of this opinion.

---

**9.** Additionally, on remand, the district court should consider HUD's request that the reference order be modified beyond the extent agreed to by plaintiffs, to ensure that HUD counsel can be present during interviews by the special master of individuals other than HUD employees.