**Lucille YOUNG, et al., Plaintiffs-Appellees,**

v.

**Samuel PIERCE, Jr., Secretary, United States Department of Housing and Urban Development, et al., Defendants-Appellants.**

**No. 86–2526.**

United States Court of Appeals, Fifth Circuit.

July 20, 1987.

Thomas M. Bondy, Harold J. Krent, Robert J. Wortham, U.S. Atty., Tyler, Tex., Michael J. Singer, Washington, D.C., Francis E. McGovern, Special Master, c/o UAB School of Public Health, Birmingham, Ala., Steven M. Mason, Tyler, Tex., Charlene Berry, HUD, Ft. Worth, Tex., Jonathan Strong, Washington, D.C., for defendants-appellants.

Edward B. Cloutman, III, Michael M. Daniel, Elizabeth K. Julian, Dallas, Tex., for plaintiffs-appellees.

Before RANDALL, GARWOOD and DAVIS, Circuit Judges.

RANDALL, Circuit Judge:

Defendants appeal from the judgment of the district court awarding plaintiffs attorney's fees and costs. We affirm in part, vacate in part, and remand to the district court for proceedings not inconsistent with this opinion.

### I.

This is the second of two appeals arising from a class action lawsuit challenging

---

HUD's[1] funding and support of various publicly assisted housing programs. The factual and procedural background of the lawsuit is set out in detail in our opinion on the related appeal in this case, reported at 822 F.2d 1368 (5th Cir.1987) and, rather than engaging in another lengthy recitation, we refer the reader to that opinion. Here, we simply set out the procedural history necessary to an understanding of the issues raised in this appeal from the district court's award of attorney's fees.

## II.

In this class action lawsuit challenging HUD's allegedly discriminatory practices with respect to three types of housing programs—the low rent public housing program, the rent supplement program, and the Section 8 program[2]—the district court granted summary judgment for plaintiffs on all liability issues. In an order granting summary judgment dated July 31, 1985, the court held that HUD promoted racially segregated housing in East Texas in violation of the fifth amendment of the Constitution, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* Title VIII of the Civil Rights Acts of 1968, 42 U.S.C. § 3601 *et seq.,* and 42 U.S.C. §§ 1981 and 1982.

Having prevailed in the liability phase of the lawsuit, plaintiffs moved for an interim award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b). The EAJA, in appropriate cases, subjects the government to liability for attorney's fees under 42 U.S.C. § 1988. *Knights of the Ku Klux Klan v. East Baton Rouge Parish School Bd.,* 735 F.2d 895, 899–900 (5th Cir.1984). Plaintiffs submitted that they were entitled to recover fees for 2,652.05 hours that they contended were reasonably expended on the litigation, at a rate of $175 per hour that was said to represent the prevailing non-contingent rate in the Dallas area. In addition, plaintiffs argued that they were entitled to an enhancement of the fee award to reflect the contingent nature of the case, and a further enhancement to reflect what they viewed as the exceptional results achieved through the litigation.

As a threshold matter, HUD argued that since the remedy phase of the litigation was still pending, an attorney's fees award was premature because the court had yet to issue a final judgment on the merits. HUD noted that the disbursement statute, 31 U.S.C. § 1304(a), prevented the government's payment of fees prior to final judgment and prior to a determination by the Attorney General that no further appeal would be sought. 28 U.S.C. § 2414.

In a lengthy opinion dated May 4, 1986, the district court rejected HUD's position, ruling that an interim award of attorney's fees was permissible despite the absence of a final judgment on every issue.[3] The court reasoned that, while the disbursement statute does prevent payment of fees prior to the entry of final judgment, it does not define final judgment as the resolution of all issues in a civil action. An order determining the "substantial rights" of the parties—like the order granting partial summary judgment in this case—may be an appropriate time for considering a fee award. The court certified the fee award as a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.

Further, the court went on to rule that plaintiffs were "prevailing parties" within the meaning of 42 U.S.C. § 1988 and therefore, were entitled to seek attorney's fees under that statute. The court proceeded to calculate the amount of the attorney's fees award, noting that "[t]he proper procedure for awarding attorney's fees is to multiply the number of hours reasonably spent on the litigation by a reasonable hourly rate." *Young v. Pierce,* No. P–80–8–CA (E.D.Tex. May 4, 1986) at 12 (attorney's fees order) [hereinafter referred to as "Attorney's Fees Order"]. The court determined that plaintiffs were entitled to recover for virtu-

---

1. Terms defined in our opinion on the related appeal in this case, 822 F.2d 1368 (5th Cir.1987), are used herein as therein defined.

2. A description of the three programs can be found in our opinion on the related appeal. *See* 822 F.2d at 1368.

3. HUD does not raise this issue on appeal.

ally all the hours they claimed, and concluded that the reasonable number of hours was 2,532.05. This number included hundreds of hours that plaintiffs' attorneys had spent going through HUD's administrative records and personally conducting on site investigations of dozens of local housing projects. The court acknowledged that at least some of this work was duplicative and could have been performed by paralegals. The court suggested, however, that given the complexity of the case, the attorneys were justified in spending a substantial amount of time acquiring firsthand knowledge of the facts.

Turning to the question of the reasonable hourly rate, the court first rejected plaintiffs' contention that the appropriate rate was that prevailing in Dallas rather than East Texas. The court found no justification for relying on a rate based on higher fees charged by attorneys in another area of the state. The court ruled, however, that the rates prevailing in East Texas in 1985 provided the appropriate standard, even though most of the attorneys' work had been performed in the years 1979 through 1984. The court reasoned that the current rate would "counterbalance the delay in payment, simplify the calculation of the fees, and comport with the prevailing view of this circuit that historic rates do not adequately compensate counsel for work performed several years before the fees are paid." *Id.* at 40. Further, the court rejected HUD's contention that use of the current rate was equivalent to awarding interest against the government in violation of the longstanding rule that the United States is not subject to awards of interest absent an express waiver of its sovereign immunity. The court acknowledged the existence of the "no-interest rule," but seemed to suggest that it applied only to *express* awards of interest.

The court determined that the applicable rates currently prevailing in East Texas ranged from $125 per hour to $150 per hour. The court stated that "the high end of the scale" was warranted in this case based on a review of several of the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). The court noted that the upper limit "was justified by the facts" of the action, and that plaintiffs' attorneys had done "an admirable job in culling the relevant facts and documents from a large administrative record." Attorney's Fees Order at 47. The court also observed that the attorneys possessed significant experience and expertise in the area of housing discrimination, and that they had performed superior work. Finally, the court stated that "[t]he results obtained in this litigation," also supported the $150 hourly rate. *Id.* at 48.

After determining the reasonable number of hours and the reasonable hourly rate, the court considered plaintiffs' request for an enhancement of the fee award based on the contingent nature of the case, that is, the risk that plaintiffs would not prevail on the merits and therefore, that their attorneys would recover no fee at all. The court analyzed the components of the adjustment for risk pursuant to the standards set out in *Graves v. Barnes*, 700 F.2d 220 (5th Cir.1983). The court determined that such enhancements were permissible, reasoning that neither the Supreme Court nor this court had expressly held otherwise. The court concluded that an enhancement was justified in the case before it, and increased the fee award by 20 percent—approximately $75,000—a figure the court itself described as "arbitrary."

The court said that upward adjustments for the risks of not prevailing may be awarded in the Fifth Circuit if: (1) the basis for the increase has not already been considered and reflected in the hourly rate or number of hours expended; (2) the attorneys have not been adequately compensated through calculation of the lodestar; and (3) a review of the criteria detailed in *Graves* supports an increase in the lodestar based on the contingency of success. The court found that, in this case, the contingency was not considered in determining the reasonable hourly rate and the lodestar did not adequately compensate for the risk. The court noted that, under *Graves*, the lodestar may be increased for the contingent nature of success based on an analysis of the plaintiffs' burden at the time the

complaint was filed, the risks assumed in developing the case, and delay in payment. Delay in payment had already been considered in awarding the hourly rate based on current fees and therefore, should not be considered again, reasoned the court. As to the first factor under *Graves*, the court noted the complexity of the case and stated that, at the beginning of the litigation, "the probability of HUD's liability was not a foregone conclusion." Attorney's Fees Order at 55. As to the second *Graves* factor, the court noted that plaintiffs' attorneys had risked considerable time without a guarantee of payment. Finally, the court rejected plaintiffs' request for a second enhancement of the fee award based on the exceptional results of the litigation.

The court ordered that HUD pay attorney's fees in the amount of $465,204. This sum included fees for work performed in seeking those attorney's fees. Additionally, the court ordered HUD to pay plaintiffs $10,202.80 to reflect expenses incurred in the litigation. Judgment to this effect was entered on May 8, 1986. Notice of appeal was filed on July 7, 1986.

### III.

The appeal filed by HUD was very limited in that HUD did not challenge the district court's ruling that plaintiffs were "prevailing parties" or the court's determination of the reasonable number of hours and the reasonable hourly fee. Rather, HUD took exception to three specific aspects on the fee award. First, HUD challenged the district court's use of hourly rates prevailing in 1985 rather than historic rates prevailing at the time the attorneys' services were actually performed in the period from 1979 to 1984. HUD argued that the use of current rather than historic rates, in an effort to compensate plaintiffs'

attorneys for the delay in receiving payment, effectively constituted an award of interest against the United States which is barred by sovereign immunity and runs afoul of the Supreme Court's decision in *Library of Congress v. Shaw*, —— U.S. ——, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

Second, HUD argued that the district court erred in enhancing the fee award to compensate for the contingency of success. This argument was based on suggestions that such enhancements are never permissible found in several Supreme Court decisions including *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, —— U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I"*), and on a prediction of the outcome of the reargument of that very issue ordered by the Court in *Delaware Valley I*.[4] The issue was reargued on October 15, 1986, and was pending in the Court at the time of briefing. As an independent ground for the argument that the district court erred in using the contingency enhancement, HUD alleged that the enhancement in this case "double-counted" factors already reflected in the lodestar calculation (i.e., the complexity of the case was already taken into account in the determination of reasonable number of hours and reasonable hourly rate).

In its third attack, HUD argued that, if this court were to rule that HUD's liability with respect to non–LRPH housing was not properly at issue in this action (an issue raised in the related appeal), the award of attorney's fees should be reduced to reflect plaintiffs' more limited success in the litigation.

As we explained in our opinion on the related appeal in this case, *see* 822 F.2d at 1368, two days before the scheduled oral argument, the parties reached a settlement

---

**4.** The Court expressly reserved decision on "the question of upward adjustment, by way of multipliers or enhancement of the lodestar, based on the likelihood of success, or to put it another way, the risk of loss," believing that resolution of the issue would be benefitted by reargument. *Delaware Valley I*, 106 S.Ct. at 3100. The Court issued an order restoring the case to the argument docket. *See* —— U.S. ——, 106 S.Ct. 3331,

92 L.Ed.2d 737 (1986) ("The case is restored to the calendar for reargument insofar as it poses the issue whether a presumptively reasonable attorneys' fee award under Section 304(d) of the Clean Air Act, 42 U.S.C. § 7604(d), may be 'multiplied' or otherwise enhanced to reflect the risk that plaintiffs might not have prevailed and, therefore, might have obtained from defendants no attorneys' fees at all.")

on certain issues raised in the two appeals. The settlement agreement provides:

1) The parties agree to restrict the class certified in the above-captioned case to applicants to and residents of traditional low-rent public housing owned by public housing authorities in the thirty-six East Texas counties.

2) This agreement shall not be construed to foreclose any argument opposing or supporting use of other HUD–assisted housing as a remedy for the class certified in paragraph #1.

3) In light of the instant agreement, the parties agree that the number of hours of attorney's fees claimed by plaintiffs in No. 86–2526 will be reduced by six per cent (calculated by years).

Joint Agreement Circumscribing Class and Leaving Open Question of Remedy. When the parties appeared at the appointed time to present argument on the appeals, the panel suggested that the parties attempt to settle the remaining issues through negotiation. The parties were asked to report back to the panel on the progress of the negotiations within twenty-one days and, if it appeared at that point that settlement could be attained in an additional ten days, the panel would refrain from deciding the remaining issues for that period of time.

On May 8, 1987, the parties informed the court that they had been unable to settle the remaining issues and thus, that the panel should dispose of them. The parties were asked to submit letter briefs addressing the effect of the settlement on the issues remaining on appeal. On the basis of the parties' submissions and our own review of the case, we conclude that HUD's already limited appeal has been narrowed even further by concessions made by the parties, leaving only one issue to be considered by this panel. That remaining issue is the propriety of the contingency enhancement used by the district court.

## IV.

We begin by noting that, with respect to HUD's argument that the district court erred in using current, rather than historic rates, the plaintiffs have conceded the necessity of a partial vacation of the fee award and a remand to the district court for a determination of the appropriate historic rates. This concession is in line with the Supreme Court's decision in *Library of Congress v. Shaw*, —— U.S. ——, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Further, it is the opinion of the parties that the third issue raised on appeal—whether a reduction of the award to reflect plaintiffs' more limited success is necessary—is resolved by the settlement agreement. As HUD has stated, "settlement of the class certification issue explicitly provided that the ultimate amount of attorney's fees be reduced by six percent." Appellants' Letter Brief at 1 (May 22, 1987).

While the parties are in agreement that, in arriving at an "ultimate amount," the district court should use historic rates, and that once the "ultimate amount" is determined, there should be a six percent reduction, one question directly relevant to a determination of the "ultimate amount" is, as yet, unresolved. That question—whether the use of a contingency enhancement was appropriate—remains for disposition by this panel.

After carefully considering the issue, we have come to the conclusion that a remand to the district court for the purpose of allowing that court to reconsider its enhancement of the fee award is in order. To start, we note that the decision by the Supreme Court on the issue held over for reargument in *Delaware Valley I* was recently handed down. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*). Throughout this litigation, the pending decision on the issue has been considered by the parties to be critical. Given that the issue addressed by the Court in *Delaware Valley II* is identical to the issue raised in this case, we believe that the district court should have the opportunity, in the first instance, to reconsider its use of a contingency enhancement in light of the standards set forth in the various opinions

filed by members of the Court.[5] The district court's reconsideration of the issue in light of *Delaware Valley II* should be aided by briefing by the parties.

While the district court is considering, on remand, the effect of *Delaware Valley II* on its decision to use a contingency enhancement, the court may also wish to consider the effect of the parties' settlement on its decision. In determining that a contingency enhancement was proper, the district court noted that, at the beginning of the litigation, plaintiffs' success "was not a foregone conclusion." At that time, the district court had before it a lawsuit that challenged HUD's actions with respect to a broad range of publicly assisted housing programs, both LRPH and non–LRPH programs. It was the determination of the court that such a lawsuit presented significant risk of nonpayment due to the questionable "probability of HUD's liability." Since that time, however, the parties have voluntarily circumscribed the scope of the lawsuit by restricting the class to applicants to and residents of low rent public housing. It seems to us an open question whether the district court would have taken the same view of the risk to plaintiffs' attorneys had the scope of the lawsuit been so circumscribed at the time of the fee award, and thus, whether the court would have found a contingency enhancement to be justified. While we believe that, on remand, the court may wish to reconsider, in light of the parties' settlement, its decision to enhance the fee award, we express no opinion on the ultimate merits of such reconsideration.

## V.

While we believe that it is appropriate for the district court to have the opportunity to consider the effect of the parties' settlement and the decision in *Delaware Valley II* on its decision to utilize a contingency enhancement, we do not believe that payment by HUD of the fee award, without an enhancement for contingency, must await that reconsideration.

As we understand HUD's position, HUD does not object to the present payment of a fee award based on historic rates and allowing for the reduction of the fee award by the six percent figure agreed to by the parties in their settlement. Therefore, we will remand this case to the district court for that court (with the assistance of the parties) to recompute the fee award, using appropriate historic rates and making the six percent reduction.[6] An appropriate order should be entered within sixty days of the date of issuance of our mandate.[7] The question of the contingency enhancement should be carried with the case and should be considered by the district court when it resolves the remaining issues in the lawsuit.

## VI.

On the basis of the foregoing, the judgment of the district court is AFFIRMED in part, VACATED in part, and REMANDED to the district court for proceedings not inconsistent with this opinion.

---

5. In *Delaware Valley II*, Justice White, joined by three justices, announced the judgment of the Court. Justice O'Connor concurred in part and concurred in the judgment. Justice Blackmun, joined by three justices, dissented.

6. Any appeal from the recomputation order will be to this panel and will be expedited.

7. Since HUD does not contest the district court's determination that plaintiffs are "prevailing parties," its calculation of the reasonable number of hours and the reasonable hourly rate, and its award of costs to plaintiffs, we affirm the award insofar as those unchallenged aspects are concerned.