**Lucille YOUNG, et al., Plaintiffs,**

**v.**

**Samuel R. PIERCE, et al., Defendants.**

**Civ. A. No. P–80–8–CA.**

United States District Court,
E.D. Texas,
Paris Division.

March 3, 1988.

Jonathan Strong, HUD, Washington, D.C., Charlene Berry, HUD, Ft. Worth, Tex., Edward B. Cloutman, III, Mullinax, Wells, Baab & Cloutman, Dallas, Tex., Elizabeth K. Julian, Executive Director, North Cent. Texas Legal Services Foundation, Inc., Michael M. Daniel, Dallas, Tex., for plaintiffs.

Steven M. Mason, Asst. U.S. Atty., Tyler, Tex., Arthur R. Goldberg, David M. Souders, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## INTERIM INJUNCTION

JUSTICE, Chief Judge.

An order, entered in the above-entitled and numbered action on July 31, 1985, held that the United States Department of Housing and Urban Development and its officials ("HUD") knowingly created, promoted, and funded racially segregated housing in East Texas in violation of the United States Constitution and federal civil rights laws. *Young v. Pierce*, 628 F.Supp. 1037 (E.D.Tex.1985). This finding of liability related to a class which included black residents of, and applicants for, HUD-assisted housing in the thirty-six class action counties. The court subsequently entered an injunction on July 3, 1986, 640 F.Supp. 1476, from which HUD appealed. On appeal to the U.S. Court of Appeals for the Fifth Circuit, the parties agreed to limit the plaintiff class to applicants for, and residents of, all traditional low-rent housing programs owned by public housing authorities (PHAs) in the thirty-six class counties. They then jointly moved the Court of Appeals to vacate all findings of fact and conclusions of law to the extent they related to liability as to persons no longer in the class. *Young v. Pierce*, 822 F.2d 1368, 1373 & n. 7 (5th Cir.1987). The Court of Appeals approved this agreement and granted the motion. *Id.* at 1373. The parties also agreed, and the Court of Appeals ruled, that the injunction should be remanded for modifications to make more specific the obligations of HUD, and to make any other modifications to the injunction that were necessary or advisable in light of the parties' settlement on the limitation of the class. *Id.* at 1374. On appeal, HUD did not contest its liability with respect to its prior actions in overseeing the low-rent public housing programs administered by the PHAs. *Id.* supra at 1373.

Pursuant to the direction of the Court of Appeals, and upon consideration of the arguments of the parties, the following interim remedial order will be entered against HUD pending final remedial orders in this case. A separate order, describing the role of the court-appointed special master in this phase of the litigation, also is filed herewith.

With respect to the plaintiff class members in this action, as modified by the agreement before the Court of Appeals, the Department of Housing and Urban Development, its officers, agents, servants, employees, successors, and all persons in active concert or participation with them, shall be, and they are hereby, ENJOINED, either directly, or through contractual or other arrangements:

1. From subjecting a class member to segregation or separate treatment in any matter related to his receipt of housing, accommodations, facilities, services, financial aid, or other benefits, under any of its programs or activities in the class action counties, on the ground of race or color. The "separate treatment" prohibitions of this provisions shall not include the affirmative and remedial provisions of this decree, which are designed to provide relief for the class.

2. To direct each public housing authority (PHA) operating a low-rent public housing project with federal financial assistance under the 1937 Federal Housing Act, as amended, 42 U.S.C. §§ 1401 *et seq.*, in the class action counties to adopt, within ninety days of the date of this order, a tenant selection and assignment plan that contains the following procedures, in addition to those required by the terms of 24 C.F.R. 1.4(b)(2)(ii):

a) The pool of vacancies from which each applicant shall be assigned a unit shall include all appropriately sized units which are actually vacant and not the subject of an outstanding offer to another applicant as of the date of the assignment. The pool of vacancies shall include all vacant units in each project owned, operated, or managed by the PHA, whether or not that project is a low-rent public housing project.

b) The applicant at the top of the waiting list shall be offered a unit in a project site where the applicant's race does not predominate, if such a unit is in the vacancy pool. An applicant's race does not predominate in a project site if the project site is

occupied by less than 75% of the members of the same race as the applicant.

c) If the applicant refuses the offered vacancy, then the applicant shall be placed at the bottom of the waiting list, and shall not be offered another unit until either every other applicant eligible for the same size unit with the same or earlier application date has been offered an appropriate unit or has withdrawn his request, or six months has elapsed from the rejection of the offer, whichever time period is longer. An offer will be deemed rejected if not accepted within ten working days from the date of the offer.

d) The PHA will make available to class members the opportunity to transfer between housing programs operated, managed, or administered by the PHA, if such a transfer will result in a desegregated housing opportunity to that class member. To "make available" means to ascertain whether such a transfer would offer a desegregated housing opportunity, and to give notice to applicants describing the transfer opportunities and informing the applicants of the actions reasonably necessary to make use of the transfer.

e) The correction of "over-housed" situations (as that term is described at 628 F.Supp. at 1052 n. 7), or "under-housed" situations (where tenant families are placed in inappropriately small units), will be done as soon as possible after the PHA becomes aware of the condition. The transfers necessary to correct over-housed or under-housed situations will be made to units in projects or project sites where the transferee's race does not predominate, if such units are available in the vacancy pool. These transfers will have priority over the filling of vacancies from the waiting list.

f) The PHA shall adopt and implement a policy for effective monitoring of its compliance with the approved tenant selection and assignment policy. This policy shall include the record-keeping necessary to determine compliance with the tenant selection and assignment procedures.

g) The PHA will submit a written report to HUD 120 days after filing of this order, and every twelve months thereafter, de-

scribing: (1) the racial occupancy characteristics of each project site owned, operated, or managed by the PHA and of the immediate area or neighborhood within which each project site is located; (2) the racial occupancy characteristics of those on the PHA's waiting list for each HUD-assisted program operated by the PHA; and (3) the racial occupancy characteristics of those receiving housing assistance through programs, other than low-rent public housing, that are operated, managed, or administered by the PHA, and the racial occupancy characteristics of the area or neighborhood within which that housing assistance is being received.

3. To exercise its discretion under its various housing programs to attempt to create and develop, for class members, housing alternatives in areas and neighborhoods that will offer the class members a desegregated housing opportunity.

4. a) To give each class member written notice, every six months, in a form and distribution method to be approved by the court, of all HUD-assisted low income housing projects and programs in relevant market areas, and the alternatives, if any, created pursuant to paragraph 3 above, which through location and/or occupancy characteristics offer class members a desegregated housing opportunity.

b) To include in the notice described in subparagraph 4. a), the full address, telephone number, and name of the person responsible for accepting applications for the project or program, a short description of the type of housing offered by the project or program, and the general eligibility requirements for the project or program.

c) To include in the notice, required by subparagraph 4. a), the names and telephone numbers of the HUD Fair Housing/Equal Opportunity (FH/EO) and program personnel, who are designated to perform the functions set out in paragraph 6, below, and a brief description of the function to be performed by those individuals.

5. To direct the owner, operator, or manager of each public housing project or

program, other than low-rent public housing, that offers assistance in non-racially impacted areas or neighborhoods in the class action counties, to amend their Affirmative Fair Housing Marketing Plan or Equal Housing Opportunity Plan within ninety days of the date of this order to include the following procedures:

a) Each project or program will include all PHAs in its respective market area as community sources to be contacted for applicant referrals, and the project or program specifically will recruit as applicants those class members referred to it by HUD.

b) The project or program will determine, for each applicant, whether or not that applicant is a class member, or currently a resident of or on the waiting list for PHA housing. For each month in which a class-member applicant is on the waiting list for admission to the project or program, the project or program will report in writing to HUD the status of the applicant including the applicant's place on the waiting list, the approximate period before the applicant will be made an offer of housing assistance, the dates of each offer of housing assistance, whether the offer(s) are accepted, the date of any rejected or withdrawn applications, and the specific reasons for any rejection or withdrawal.

c) The project or program will give class members a priority and preference, equal to, but no greater than, any special priorities and preferences accorded in its recipient-selection process to applicants who: (1) are living in substandard housing, (2) are displaced by government action, (3) are in need of emergency housing, or (4) have other special housing needs.

d) To determine, every three months, the racial composition characteristics of those receiving its assistance, the racial identification of the area or neighborhood within which those receiving its assistance are located, and the racial composition of those on the waiting list for its assistance.

6. To designate specific HUD personnel to respond to requests for information, requests for assistance, and complaints of discrimination or of violations of HUD ap-

plicant-selection procedures, from class members desiring to obtain housing assistance in non-racially impacted areas. The assistance to be provided shall include referrals of interested class members to public housing projects, and programs other than low-rent public housing projects, that offer desegregative housing opportunities in the relevant market area, as well as any other assistance HUD deems appropriate in the specific situation presented to it.

7. To keep a written record both of the requests and complaints received by the personnel designated in paragraph 6, above, and of all actions taken by HUD as a result of the requests or complaints.

8. To comply with the following specific requirements in the course of conducting Title VI investigations and compliance activities with regard to PHAs in the thirty-six class action counties:

a) To seek out, and document, the cause of each "racial disparity" or "Title VI problem" as those terms are defined in the HUD Title VI Handbook 8040.1 6/76, at pages 20–23, and to include the documentation in the Title VI investigation report.

b) To afford those PHAs that receive notice of apparent noncompliance with Title VI not more than sixty calendar days, from the date of receipt of such notice, to comply substantially with the provisions of Title VI, before referring the matter to HUD's Central Office FH/EO for formal enforcement and other proceedings.

9. To perform the intensive non-discrimination monitoring set out in HUD Handbook 7465.2 REV., The Public Housing Occupancy Audit Handbook, for each PHA in the thirty-six class action counties, within two years of the date of this order. In the conduct of these reviews, HUD shall compile a written report specifically answering each of the questions, and make each of the determinations, that are required by the items set forth in said Handbook. HUD shall initiate a Title VI compliance review for each PHA for which "racial disparities," or "Title VI problems," are identified during the monitoring. To the extent that HUD has conducted such an

occupancy audit of a PHA since October 1985, in full compliance with the provision of said Handbook, the provisions of this requirement shall not apply, provided that HUD furnishes the plaintiffs, the special master, and the court all documentation showing that such an audit was conducted, and that the provisions of said Handbook were complied with.

10. To include, as a "Gross Indicator" of each PHA in the thirty-six class action counties, the presence of racially identifiable projects or project sites. ("Gross Indicator" is defined in HUD Handbook 7460.7 REV. Annual Performance Review.)

11. To give a priority to class action county PHA proposals for Comprehensive Improvement Assistance Program (CIAP) funds, which proposals are designed to remedy disparities in physical conditions between racially identifiable white and black projects.

12. To consider, in its evaluation of the appropriate Section 8 Fair Market Rent levels for the market areas that include the class action counties, the effect of the rent levels set on the opportunity of class members to obtain a desegregated housing opportunity through transfer to the Section 8 certificate or voucher program.

13. To consider, in its evaluation of the procedures governing its Section 8 certificate and voucher programs operating in the class action counties, the effect of such procedures on the opportunity of class members to obtain a desegregated housing opportunity through transfer to the Section 8 certificate or voucher program.

14. With respect to HUD-controlled housing resources that are available, and with respect to such resources that will become available during the interim injunction period, which might be used to desegregate the dual system of public housing in the class counties, to furnish to the plaintiffs, the court, and the special master, the following:

a) A statement of all housing resources, including, but not limited to, amounts for construction of new low-rent public housing, Section 8 vouchers and certificates, and CIAP funds which are allocated to HUD Region VI, which shall include funds for the fiscal year beginning October 1, 1987. The statement of resources now available shall be furnished within sixty days of the filing of this order.

b) Copies of all invitations for applications for funds and Notices of Funding Availability that are, or will be, sent to PHAs in Region VI at any time from the date of this injunction on.

15. To file with the court, every three months, reports detailing the status of compliance with each provision of this order, and specifically reporting the results of that compliance.

16. To give plaintiffs' counsel access to all documents referred to in this Order, upon reasonable notice to defendant.

It is so ORDERED.