United States Court of Appeals,

Fifth Circuit.

No. 94-40425.

STATE OF TEXAS and Texas Department of Transportation, by and through the Texas Transportation Commission, Plaintiffs-Appellees,

v.

KNIGHTS OF the KU KLUX KLAN, James R. Hall, Jr., individually and as a representative of the Knights of the Ku Klux Klan and Michael D. Lowe, individually and as a representative of the Knights of the Ku Klux Klan, Defendants-Appellants.

July 25, 1995.

Appeal from the United States District Court for the Eastern District of Texas.

Before REAVLEY and EMILIO M. GARZA, Circuit Judges, and PRADO[*], District Judge.

REAVLEY, Circuit Judge:

The Knights of the Ku Klux Klan, James R. Hall, Jr., and Michael D. Lowe (collectively the "Klan") appeal a summary judgment issued against them and in favor of the State of Texas and the Texas Department of Transportation (collectively the "State"), declaring that the State has no legal obligation to grant the Klan's application to participate in the Texas Adopt-a-Highway Program (the "Program"). We affirm.

BACKGROUND

Through the Program, a business or organization adopts two miles of highway and collects litter there. The State posts signs naming the adopter at both ends of the adopted miles. In December,

---

[*]District Judge of the Western District of Texas, sitting by designation.

1

1993, the Knights of the Ku Klux Klan, through Michael Lowe as Grand Dragon and James R. Hall, Jr., filed an application with the Texas Program to adopt a stretch of state highway on Highway 105 or Highway 12, in or near Vidor, Texas. Highway 105 runs directly in front of and provides the primary entrance to the federally subsidized public housing project in Vidor. Highway 12 is near the project.

The public housing project in Vidor is under a continuing order requiring desegregation of the project. *See Young v. Pierce,* 685 F.Supp. 986 (E.D.Tex.1988). The summary judgment record shows that efforts to desegregate the housing project have encountered strong opposition from the Klan. Residents of the housing project and Vidor public officials have reported numerous threats and acts of intimidation by the Klan. Black residents who moved into the project received harassing phone calls and persons tried to break into their apartment. The mayor of Vidor reported receiving a warning that the Klan intended to hang her in "black effigy." In a state court proceeding against the Klan, a witness testified that a Klan member declared at a rally that "[t]here's going to be blood in the streets of Vidor." As a result of the attempts by the Klan to deter desegregation of the project, a Texas district court deemed it necessary to enter an injunction against the Klan prohibiting the Klan from intimidating residents, from demonstrating at the project entrance and from impeding access to or egress from the project. *Hale v. Texas Knights of the Ku Klux Klan,* No. 93-074143 (261st Dist.Ct., Travis County, Tex., Feb. 3,

2

1994).

On January 18, 1994, before taking any action on the Klan's application to participate in the Program, the State filed suit in federal district court seeking a declaratory judgment that rejection of the Klan's application to adopt two miles of highway near the Vidor housing project would not violate the First Amendment. The district court granted summary judgment in favor of the State, and the Klan appeals.

DISCUSSION

We hold that the State will not violate the First Amendment by rejecting the Klan's application to adopt a portion of highway near the housing project in Vidor, Texas. Assuming that the Klan's participation in the Program would constitute speech or expressive conduct protected by the First Amendment,[1] the Program is a nonpublic forum and the Klan's exclusion from the Program is reasonable and viewpoint-neutral.

A. *Nonpublic Forum*

The extent to which the government may limit access to a forum for purposes of engaging in speech depends on the nature of the relevant forum. *Cornelius v. NAACP Legal Defense and Educ.*

---

[1]The district court found that the Klan wishes to have its name posted and to engage in trash collection on the highway near the Vidor project in order to send a message of its presence and its disapproval of desegregation of the project. The Klan contends it would engage in speech and expressive conduct through participation in the Program. However, the Klan's conduct would serve only to threaten and intimidate current and potential future residents of the Vidor project. We need not decide whether such speech is protected by the First Amendment. *See United States v. J.H.H.,* 22 F.3d 821, 825, 828 (8th Cir.1994).

*Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985). The government must provide a compelling governmental interest to restrict access to a traditional public forum or to a forum designated by the government as public. *Id.* The government may restrict access to a nonpublic forum, though, so long as the restrictions are reasonable and are " "not an effort to suppress expression merely because public officials oppose the speaker's view.' " *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)).

In pinpointing the relevant forum, we must focus on the "access sought by the speaker." *Id.* We employ a "tailored approach" in determining what constitutes the forum within the confines of government property. *Id.* In *Cornelius,* the government wished to exclude certain groups from participating in a charitable fundraising drive conducted in the federal workplace. The Supreme Court defined the forum as the fundraising campaign rather than the government buildings which housed federal workers. *Id.* In *Perry Educ. Ass'n,* the Court defined the forum as the internal mail system of a public school rather than the school property. 460 U.S. at 44, 103 S.Ct. at 954; *see also Lehman v. City of Shaker Heights,* 418 U.S. 298, 302, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974) (defining forum as advertising spaces on the buses).

Similarly, we define the forum in this case as the Program rather than the public highways. The Klan does not seek general access to the public highways for speech purposes or even for litter retrieval purposes. Rather, by participation in the

4

Program, the Klan wishes to put its members on the highway under the auspices of the State and gets its name on a sign at a particular location.

The Program is a nonpublic forum. The Program is not a traditional public forum, as are public streets and parks. Nor has it been designated by the State as a public forum. There is no indication that the State intended to open up the Program for public discourse. *See Cornelius,* 473 U.S. at 802, 105 S.Ct. at 3449.

The Program does not have as its purpose the provision of a forum for expressive activity. *See International Soc'y for Krishna Consciousness v. Lee,* --- U.S. ----, ----, 112 S.Ct. 2701, 2707, 120 L.Ed.2d 541 (1992); *Cornelius,* 473 U.S. at 804, 105 S.Ct. at 3450. The stated purpose of the Program is to allow citizens an opportunity to support the Department of Transportation's efforts to control and reduce litter. Tex.Admin.Code tit. 43, § 25.801. Any opportunity for speech provided by the Program is peripheral to that central purpose. The government does not create a public forum merely by permitting some speech. *Cornelius,* 473 U.S. at 802, 105 S.Ct. at 3449; *see also Perry Educ. Ass'n,* 460 U.S. at 47, 103 S.Ct. at 956.

The State restricts and controls the size and content of the signs posted at the ends of the adopted miles. *See* Tex.Admin.Code tit. 43, § 25.807(5). Only the name of the adopting group is placed on the sign, and no discourse or exchange of ideas is possible. Persons who are not state officials may not erect their

5

own signs without state authorization. Tex.Rev.Civ.Stat.Ann. § 6674v-7(b) (West Supp.1995). Such limitations on the quantity and content of speech are indicative of an intent to maintain a nonpublic forum. *See Cornelius,* 473 U.S. at 800, 804, 105 S.Ct. at 3447, 3450.

In addition, the State has made participation in the Program available only to certain entities. Tex.Admin.Code tit. 43, § 25.803. For example, individuals and political organizations are subject to exclusion. *See* Tex.Admin.Code tit. 43, §§ 25.803, 25.807(4). All applications must be approved by the State Department of Transportation. Similar limitations have supported determinations that a program is not a public forum. In *Cornelius,* the Supreme Court noted that the government's consistent policy had been to limit participation in the fundraising campaign to certain voluntary agencies. The Court noted that this practice was inconsistent with an intent to create a public forum. 473 U.S. at 804, 105 S.Ct. at 3450. In *Perry Educ. Ass'n,* the Supreme Court held that the State had shown no intent to create a public forum where it allowed access to the school's internal mail system only to those who received permission from the individual building principal. 460 U.S. at 47, 103 S.Ct. at 956.

B. *Reasonable Restriction*

The State may refuse to grant the Klan's application to adopt a section of highway near the Vidor housing project as a reasonable restriction on speech in a nonpublic forum. The reasonableness of a government restriction of access to a nonpublic forum is assessed

6

"in the light of the purpose of the forum and all the surrounding circumstances." *Cornelius,* 473 U.S. at 809, 105 S.Ct. at 3453.

The Klan wishes to adopt a portion of highway near a housing project in Vidor, Texas which is under an order to desegregate. The Klan has engaged in such virile opposition to the desegregation of the project that a state court has seen fit to enjoin the Klan from blocking access to the project and from intimidating residents. The State provided summary judgment evidence indicating that the residents of the project would feel fear and frustration if the Klan were allowed to adopt a highway near the project. The posting of a sign outside of the Vidor project announcing the Klan's name would likely cause Vidor residents a great deal of anxiety. The presence of Klan members on the highway in Klan attire picking up trash at the entrance to the project would invite strife and interfere with compliance with court orders.

Given this context, the State could reasonably believe that the Klan's adoption of a section of highway outside the project would result in further intimidation of the residents of the housing project and would create unreasonable conflict.[2] The district court found and the State could reasonably believe that the Program would be used by the Klan as a subterfuge, particularly after the state court enjoined various Klan activities in Vidor relating to the project, allowing the Klan to discourage

---

[2]It has not been shown, in this declaratory judgment action, that violence or strife would necessarily occur if the Klan adopted a section of highway near the housing project. However, the State "need not wait until havoc is wreaked to restrict access ..." *Cornelius,* 473 U.S. at 809, 105 S.Ct. at 3453.

desegregation of the project by means that it could not openly accomplish. The State may conclude that participation by the Klan in the program would substantially impede the State's ability to encourage compliance with the federal injunction requiring desegregation.

The purpose of the Program is to encourage trash removal on the highways of Texas. The Program was not meant to be used as a platform for launching a program of intimidation, nor as a means of inciting tension and possibly even violence. Use of the Program to thwart a federal court order requiring desegregation is certainly not consistent with its purposes. The State would act reasonably in preventing the use of the Program for such purposes by prohibiting the participation requested by the Klan.

The State may also reasonably conclude that the adoption by the Klan of a section of highway outside of Vidor would frustrate the use of the State's public highways. The summary judgment evidence supports a finding that project residents and their family members would be reluctant to use highways adopted by the Klan, particularly if the Klan was present gathering trash. We must consider the function and nature of the relevant government property, in addition to the purpose of the relevant forum within that property, in evaluating the limits that may be imposed on speech. *Cornelius,* 473 U.S. at 800-03, 105 S.Ct. at 3448-49. The Texas highways exist for the purpose of facilitating movement around the state. The State does not act unreasonably when it prohibits speech which would interfere with that function.

8

The State may also reasonably reject the Klan's application to protect the privacy of project residents in their homes and to prevent the residents from becoming captive audiences. One of the portions of highway which the Klan seeks to adopt provides the only means of entry or exit for the Vidor public housing project. If the Klan's name were placed on a sign near the entry to the project, the residents of the project would be forced to receive the message of the Klan's presence each time they wished to leave or return to their homes in the project.

In *Frisby v. Schultz,* the Supreme Court recognized residential privacy as a significant governmental interest justifying limitations on speech even in the context of a public forum. 487 U.S. 474, 483-87, 108 S.Ct. 2495, 2502-03, 101 L.Ed.2d 420 (1988). In *Frisby,* the Court emphasized that the speech at issue was directed at individual residences so that persons became captive audiences inside their own homes. *Id.,* 487 U.S. at 485, 108 S.Ct. at 2502. In this case, the Klan wishes to direct speech at the project as a whole. Although residents of the project could avoid the message inside their own homes, they would not be able to leave or enter the project without encountering the Klan's sign. The imposition of the Klan's message would affect the privacy of the residents in the housing project where they live. The State would act reasonably, then, in seeking to protect the residential privacy of the residents. The Supreme Court has also recognized that, when a nonpublic forum is involved, the government may limit speech to protect against its imposition upon a captive audience, even

9

outside of the home.  *Lehman v. City of Shaker Heights,* 418 U.S. at 304, 94 S.Ct. at 2718.  The State would not act unreasonably in disallowing the Klan's message to be imposed upon the captive audience of residents of the Vidor project.

Some residents of the project might be willing recipients of the Klan's message.  *Cf. Frisby,* 487 U.S. at 485, 108 S.Ct. at 2503.  However, the State is not required to show that its restriction on speech would limit speech *only* as to captive and unwilling recipients of the Klan's message.  The State faces no such requirement that its restraint on speech be "narrowly tailored."  *United States v. Kokinda,* 497 U.S. 720, 735, 110 S.Ct. 3115, 3124, 111 L.Ed.2d 571 (1990).  The State's restriction on speech must be reasonable, but it need not be the "most reasonable."  *Cornelius,* 473 U.S. at 808, 105 S.Ct. at 3452.

The State has provided adequate justification for the exclusion of the Klan from the Program under the circumstances of this case.  The State's refusal to allow the Klan to adopt a section of highway near the public housing project in Vidor, Texas is reasonable for the above-stated reasons.

C. *Viewpoint Neutral*

The existence of reasonable grounds for preventing access to a nonpublic forum will not justify a State's restriction of speech where the restriction is actually "an effort to suppress expression merely because public officials oppose the speaker's view."  *Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. at 955.  However, the government is not required to act with content neutrality in

10

limiting access to a nonpublic forum and may make "distinctions in access on the basis of ... speaker identity." *Id.,* 460 U.S. at 49, 103 S.Ct. at 957. The State's rejection of the Klan's application to the Program constitutes a viewpoint-neutral restriction on speech.

There is no indication in the record that the State's attempt to prevent the Klan from adopting a section of highway outside of Vidor is actually motivated by a desire to suppress the Klan's viewpoint. *See id.,* 460 U.S. at 49 n. 9, 103 S.Ct. at 957 n. 9. The fact that the State wishes to exclude only one group with a certain viewpoint does not alone make the exclusion viewpoint based. *See Madsen v. Women's Health Ctr., Inc.,* --- U.S. ----, ----, 114 S.Ct. 2516, 2524, 129 L.Ed.2d 593 (1994) (all persons enjoined were demonstrators against abortion); *Perry Educ. Ass'n,* 460 U.S. at 49, 103 S.Ct. at 957 (one of two teacher's unions excluded from internal mail system). The State's desire to prevent the participation of the Klan in the Program is not due to the opinions of the Klan, but rather results from the foreseeable impact of Program participation by the Klan, given the past conduct of the Klan, upon the peace and privacy of the project residents and use of the state's highways. *Cf. Perry Educ. Ass'n,* 460 U.S. at 49, 103 S.Ct. at 957 (no viewpoint discrimination where the government excludes a group based on its status rather than its views); *Madsen,* --- U.S. at ----, 114 S.Ct. at 2524 (no viewpoint discrimination where limitations on the speech of persons with similar viewpoints is based on past conduct of those persons).

11

CONCLUSION

On the specific facts of this case, we conclude that the State will not violate the First Amendment by refusing to allow the Klan to adopt a section of highway outside of the housing project in Vidor, Texas. The State's denial of the Klan's application to the Project is a reasonable effort to avoid strife and intimidation of current and prospective residents of the Vidor public housing project and to promote compliance with a federal desegregation order. The State's limit on speech is also a reasonable measure to insure free use of the public highways of the State and to protect against the imposition of a message on captive recipients. Finally, the exclusion of the Klan from the Project is viewpoint neutral.

AFFIRMED.

PRADO, District Judge, concurring:

I concur in the result reached by the majority but I write separately because I believe a different methodology is appropriate.

Although I agree that the Adopt-A-Highway program is a non-public forum, and that the State's offered reasons for excluding the Texas Knights of the Ku Klux Klan (the "Klan") from participation in the program are viewpoint-neutral, I do not find that the traditional test of viewpoint-neutral, reasonable restrictions is applicable in analyzing a regulatory scheme that

12

lacks restrictions.[1]

Nevertheless, I find that the state may constitutionally exclude the Klan from its program under the facts of this case. Conceding that the Klan has a First Amendment right to participate in the Program, I find that the Klan's right to express itself in this non-public forum is surmounted by the State's compelling interests in ensuring compliance with the state and federal injunctions affecting the Vidor project, interests which the majority refers to as "reasonable restrictions."

---

[1]In this case, the statute in question has not been subjected to a facial challenge, a test this statute may not survive. *See Cox v. State of Louisiana,* 379 U.S. 536, 557-58, 85 S.Ct. 463, 466, 13 L.Ed.2d 487 (1965) (finding "it clearly unconstitutional to enable a public official to determine which expressions will be permitted and which will not ... by use of a statute providing a system of broad discretionary licensing power").